

**FILED**

NOV 0 5 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION - CLEVELAND

| | | |
|---|---|---|
| MICHAEL W. ACKERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | | |
| | | 1 : 21- cv-2084 |
| BANNER LIFE INSURANCE; | ) | |
| and | ) | |
| MICHELE L. ROILAND aka | ) | |
| MICHELE L. ACKERMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MICHELE L. ACKERMAN'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, MICHELE ACKERMAN, for her Answer to Plaintiff's Original Complaint filed in The Cuyahoga County Court of Common Pleas , states as follows:

### JURISDICTION

Defendant Michele Ackerman disputes that The Cuyahoga County Court of Common Pleas has jurisdiction to decide this dispute. This dispute is centered around a life insurance policy that was part of the September 30, 2016 Final Judgment for Divorce

4

entered by Judge Hany A. Mawla of The Superior Court of New Jersey Chancery Division-Family Part Somerset County. Given this, the New Jersey Court has continuing and exclusive jurisdiction over all disputes related to its Final Judgment. Secondly, Michele Ackerman disputes that an Ohio court has personal jurisdiction over her. Finally, Michele Ackerman disputes that The Cuyahoga County Court of Common Pleas is the appropriate venue and inquires as to why this Civil Motion was filed in Cuyahoga County as Michael Ackerman resides at 3875 East Lake Road Sheffield Lake, OH 44054, which is located in Lorain County, Ohio.

## FACTS OF THE CASE

1. Michael and Michele Ackerman were married and eventually filed for divorce in Somerset County, New Jersey, case number (FM-18-704-15). Both parties were represented by counsel, and the proceedings quickly turned nasty.

**ANSWER:** Defendant Michele Ackerman admits that she and Michael Ackerman were married and eventually filed for divorce in Somerset County, New Jersey, case number (FM-18-704-15) and that both parties were represented by counsel. Defendant, Michele Ackerman, further admits that the proceedings were contentious because Plaintiff is a liar, cheater, and a fraud. Look no further than the lawsuit the SEC filed against Michael Ackerman in the United States District Court Southern District of New York, on February 11, 2020. On September 8, 2021, Michael Ackerman pled guilty to wire tap and fraud, and admitted to causing the unsuspecting victims of his cryptocurrency scam losses of more than $36 million. As you can see in court records on this case, Michael doctored phony screen shots of false earnings to unsuspecting investors. He is a manipulative scam artist driven by his own selfish monetary gains. He is currently awaiting sentencing on January 5, 2022. (Exhibit A)

2. On September 30, 2016, a Final Judgment for Divorce was granted which contained the following language:

> Husband will maintain life insurance coverage in an amount no less than $300,000, naming Wife as beneficiary, to secure the balance of any unpaid spousal support obligation. Husband has the option of reducing the amount of coverage by no more than $15,000 annually. [Judgment, page 5].

**ANSWER:** Defendant Michele Ackerman agrees *this is a portion* of the September 30, 2016 Final Judgment. The Final Judgment also contained the following language:

Each party will maintain a life insurance policy of no less than $300,00.00 naming the unemancipated children as co-beneficiaries and naming the other party as trustee. These policies will remain at $300,000.00 until all three children are emancipated. (Exhibit B- Judgment, page 2, Child Support part b.)

Michael chose to combine the two court-ordered policies in the divorce settlement. Instead of taking out **two** separate life insurance policies each worth $300,000.00, he took out **one** policy for $600,000.00. (See Exhibit C, which includes the Banner Life Policy as Exhibit 4)

3. It is this paragraph, and the war that resulted from it, that gives right to this complaint.

**ANSWER:** Denied. If you believe, as the mother of our three children, that standing up for the best interests and security of our children, while Michael attempts to steal from them and neglect his obligations as their father is participating in war, then go ahead and call it that.

4. Pursuant to the claims contained therein, on January 24, 2018, Michael Ackerman secured a life insurance policy from Defendant Banner Life Insurance Company

("Banner"), policy number 181415457, in the amount of $600,000.00, naming Michele Roiland as 50% beneficiary.

**ANSWER:** While I was aware of the policy, Michael never provided me with a copy of the Banner life insurance policy document. The first time I saw the complete policy was when Michael submitted it in the Civil Motion he filed and was heard in The Superior Court of New Jersey Chancery Division-Family Part Somerset County on September 17, 2021. (Exhibit C) I also paid the premiums on the Banner policy for three quarters dated December 1, 2020, February 12, 2021, and May 11, 2021. (Exhibit D) Michael claimed he was unable to pay for the premiums, so I had no choice but to make the payments or the policy would lapse.

5.     This Banner policy fully satisfied the terms of the divorce judgment.

**ANSWER:**   I assumed at the time the policy satisfied the terms of the divorce judgment. I never received a copy of the policy until Michael submitted it in the Civil Motion he filed and was heard in The Superior Court of New Jersey Chancery Division-Family Part Somerset County on September 17, 2021. (Exhibit C)

6.     This Banner policy also contained an Accelerated Death Benefit ("ADB") rider, which contained the following language:

Benefit Limits

The maximum accelerated death benefit is the lesser of:

1.   75% of the policy's primary death benefit as determined on the date that the company approves payment of the ADB; and,

2.   $500,000.00

This amount is further reduced by any policy loan, with accrued interest, on the date of payment of the ADB.

**ANSWER:** The Banner policy speaks for itself. The life insurance policy Michael was ordered and agreed to obtain during our divorce proceedings was meant to protect our unemancipated children, as well as unpaid Child Support and Alimony payable to me in the event of his death. An Accelerated Death Benefit would only benefit Michael. This policy was never ordered for his own selfish gain. Why would Michael even think about taking out such a rider as an ADB unless he planned to use it some day for himself?

7.     On July 29, 2019, Michael Ackerman purchased a second life insurance policy from AAA Insurance Policy ("AAA"), policy number 4046238327, in the amount of $600,000.00, naming Michele Roiland as 50% beneficiary.

**ANSWER:** The first time I became aware of the alleged AAA policy was in a text message from Michael dated March 5, 2021. (Exhibit E) Michael never showed evidence of the alleged AAA policy until he filed the Civil Motion that was heard in The Superior Court of New Jersey Chancery Division-Family Part Somerset County on September 17, 2021. At that time and upon review of the alleged AAA Life Insurance Policy, I discovered many discrepancies in the document. In response to Michael's September 2021 Motion, I highlighted the discrepancies and inconsistencies on the alleged AAA policy which I submitted as my exhibit prior to the September 17, 2021 hearing at The Superior Court of New Jersey Chancery Division-Family Part Somerset County. I have attached Michael's certification to the court for that hearing (Exhibit C), as well as the

certification I submitted to the court as a response for that hearing. (Exhibit F) Within Exhibit F, you will find the documentation of inconsistencies that I asked The Superior Court of New Jersey Chancery Division-Family Part Somerset County to consider before making a judgment.

8.      This AAA policy also fully satisfied the terms of the divorce judgment, which was now fulfilled by two separate policies.

**ANSWER:** Denied. The authenticity of the alleged AAA policy has never been verified. Michael never showed evidence he purchased an additional policy until he filed the Civil Motion that was heard in The Superior Court of New Jersey Chancery Division-Family Part Somerset County on September 17, 2021. I questioned then and now the validity and authenticity of the alleged AAA life insurance policy. It appears to be a fraudulent policy, and The Superior Court of New Jersey Chancery Division-Family Part Somerset County agreed the document needed to be verified. The court ordered Michael's counsel in the New Jersey proceeding to verify the existence and validity of the policy. Michael immediately withdrew his motion, so the investigation was never completed. (Exhibit G) The transcript of the September 17, 2021 hearing is attached. (Exhibit H)

9.      Sometime after the Banner and AAA policies were purchased, Michael Ackerman was told he is in acute liver failure. Without a successful liver transplant, he is terminally ill and his life expectancy is short.

**ANSWER:** In August 2019, Michael informed me he was sick and undergoing tests. On September 25, 2019 Michael texted me he had pancreatic cancer. In a phone

call, he said he was diagnosed by doctors in New York and would be receiving a second opinion at the Cleveland Clinic in Ohio. The next call he stated he was beginning treatment in Ohio. On October 13, 2019, Michael informed me he was now diagnosed with stomach cancer. He did not want to tell our children at that time. On October 19, 2019, Michael texted he was at Houston Medical for additional tests and a possible trial of treatment. On October 25, 2019, Michael sent me a text that he now was diagnosed with small cell lung cancer. It was after this diagnosis that he spoke to our children and told them his condition. He also asked if he could come to New York to see the kids for a "good-bye dinner" because the doctors did not think he would live through the holidays. Michael did not want the kids to see him when he became very ill and have that be their last memory of him. On November 15, 2019, Michael came to New York and took my entire family including our children to dinner in Manhattan. At the end of the meal, you can only imagine the emotions our children were going through. They were devastated and sobbing. Three days after the dinner, on November 18, 2019, Michael texted and stated his lung tumors decreased by almost 10% and another experimental drug was added to the mix. At the beginning of January 2020, Michael's wife called to say he was in the hospital in Montana. Michael had developed an infection and was in a coma. It was during that phone call his wife informed me Michael was NEVER diagnosed with cancer. He was diagnosed with cirrhosis of the liver. Michael lied for months and put our children through emotional hell. This was nothing short of emotional abuse. When Michael awoke from the coma and was feeling better, I asked him why he lied, and did he understand what he had just done to our

children. He stated he was misdiagnosed. Again, another lie, as his wife told me he was NEVER diagnosed with cancer in the first place. Michael refuses to ever accept responsibilities for his actions. To this day, I question whether he feels remorse for what he put our children through all those months.

10.     Over the last two years, and despite his best efforts, Michael Ackerman has been unsuccessful in securing a liver donor. His medical outlook has not changed.

     **ANSWER:** Michael has indicated that he is awaiting a liver transplant.

11.     In response to this catastrophic medical news, Michael Ackerman contacted Banner to exercise his contractual rights under the Accelerated Death Benefit rider, to secure money to help pay for medical bills, cost of travelling for a transplant, etc.

     **ANSWER:** When exactly was Michael diagnosed? Michael contacted Banner only AFTER he was indicted by the Federal Government sometime around February 11, 2020. I believe he was placed under house arrest and his assets were frozen. He had no means of income. So, after stealing from 150 doctors in his admitted cryptocurrency investment scam, he was and is now trying to steal from our children. Again, I question the motive of him even obtaining this Accelerated Death Benefit Rider in the first place. Was this always part of his backup plan?

12.     Pursuant to the ADB language in Banner's policy, the accelerated death benefit would reduce the beneficiary payout by as much as 75% upon the death of the insured.

     **ANSWER:** The Banner policy speaks for itself. The ADB would benefit Michael and would negate the underlying purpose of the divorce court order in which Michael

was to obtain two life insurance policies; one to provide for our unemancipated children and one to provide for child support and alimony in the event of Michael's death.

13.     If one only knew the very few facts, on the surface it might appear that Michael Ackerman was trying to significantly reduce Michele Roiland's benefits under the Banner policy.

**ANSWER:** Yes, it does appear that way. Further, the very questionable nature and disputed existence of the alleged AAA policy confirms this. I would please ask this Court to confirm the authenticity of the alleged AAA policy as it needs to be verified before this or any Court makes a judgment on this case. Please refer back to the inconsistencies and concerns I highlighted on that policy contained in Exhibit F. Please understand, if the alleged AAA policy does **not** exist, and this Court agrees to replace the AAA policy for the Banner policy without verifying the authenticity of the AAA policy, this would directly violate The Superior Court of New Jersey Chancery Division-Family Part Somerset County's order and upon Michael's death, the children and I will be left without financial security. As mentioned earlier, The Superior Court of New Jersey Chancery Division-Family Part Somerset County ordered that this policy be verified during a hearing on September 17, 2021, but Michael withdrew his motion the next day before that could happen. (Exhibit G)  Please also refer to the Court transcript of the hearing on September 17, 2021. (Exhibit H)  Now it would appear Michael is trying to bring this case to this Ohio Court to be heard since things did not go the way he planned the first time in New Jersey.

14.    Michele Roiland's benefits, as required by the divorce judgment, have never been threatened. At the time, there was double coverage with both policies in force.

**ANSWER:** Denied. I find the timing of Michael's presentation of this alleged second policy, AAA, ironic. On August 21, 2020, Michael stated in a text that he had established a $2 million trust for me and our children to be effective upon his death. He sent waivers of beneficiary forms for me and our children to sign so he could cash out the Banner policy. I refused to sign. After some research and then confronting Michael, he confirmed he was selling the Banner policy to a third party broker, Coventry. Once the children and I signed the waiver of beneficiary rights, he would name Coventry as the beneficiary. Coventry would pay Michael an amount that I am unaware of, up front. Upon his death, Coventry would receive the full benefit, $600,000.00, of the policy. Again, Michael assured me there were trusts for me and our children. I did not believe him, and I refused to waive beneficiary rights. There are two things to consider at this point. Why was Michael trying to sign beneficiary rights over to Coventry if the Banner Policy had this Accelerated Death Benefit Rider? Also, please consider at that time, August 2020, Michael supposedly had already obtained the alleged AAA policy. Why did he not tell me he obtained the alleged AAA policy at that time? Michael never mentioned a second policy until March 5, 2021. (Exhibit E) Why not send me documentation of the alleged AAA policy at that time? Why wait until September of 2021 to disclose it for the first time in his Motion that was heard on September 17, 2021 in The Superior Court of New Jersey Chancery Division-Family Part Somerset County? (Exhibit C)

15.     Nevertheless, Michele Roiland somehow learned that Michael Ackerman was attempting to exercise his Banner ADB, and the war was immediately resumed.

**ANSWER:** Michael was the one who ultimately informed me he was attempting to exercise his Banner ADB, albeit in a characteristically manipulative scheme. And when I refused to sign the waiver of beneficiary, Michael declared he could no longer afford to pay the premium on the Banner policy. It would just have to lapse. I offered to pay the premium for the security of our unemancipated children, as well as for myself. At that time, our daughter, Marissa, was in her junior year of college, and our son, Michael, in his junior year of high school. Marissa and Michael are both graduating this spring. Michael is currently applying to colleges, so after this year of high school, there is the cost of four years of college. In the event of Michael's death, the life insurance money would be used to pay for our children's education and off-set Michael's 57% share of ⅔ of the tuition as stated in our divorce agreement. (Exhibit B)

16.     On February 22, 2021, Michele Roiland's attorney, Timothy Dey of East Brunswick, NJ, penned a terse and factually-incorrect letter to Banner stating, inter alia:

"The Irrevocable beneficiaries of this policy are Plaintiff ex-wife Michele L. Roiland (F/K/A Ackerman) and the parties' children. By order this policy cannot be changed, terminated, or assigned."

**ANSWER:** While I deny that the letter was terse or factually incorrect, my attorney did send a letter. (Exhibit I) My attorney was aware of what Michael was attempting to do and we needed to make Banner Life aware of it as well to preserve the intent of The Superior Court of New Jersey Chancery Division-Family Part Somerset County's order.

At that time, Michael never mentioned or presented the alleged second AAA policy. The first time Michael mentioned the alleged AAA policy was via text message on March 5, 2021. (Exhibit E)

17.     Upon receiving a copy of this letter, Michael Ackerman contacted counsel in Ohio for an opinion. Upon reviewing the Banner policy, the divorce judgment, and noting the AAA policy was also in force, it became painfully clear that Ms. Roiland was not listed as an irrevocable beneficiary in either policy nor were her benefits being threatened by Michael Ackerman's pursuit of the ADB.

**ANSWER:** As I was never provided a complete copy of the Banner Life policy until the September hearing, I was unaware of the terminology or type of beneficiary I or the children were listed as in the policy. Again, at this time Michael NEVER presented the alleged second AAA policy. Once again, I ask this Court to please verify the authenticity of the alleged AAA policy that is supposedly in force.

18.     On March 29, 2021, counsel penned a letter to Banner and Attorney Dey correcting Attorney Dey's wholly off-base letter, especially noting that:

Banner Life's office is not the appropriate forum to address this matter, assuming some issue exists in the first place. If Ms. Roiland believes that Mr. Ackerman is somehow in violation of the terms of their divorce, then the proper arena to address Ms. Roiland's concerns is the Somerset County Superior Court of New Jersey, not this office. It is not up to Banner Life to adjudicate whether this particular policy, or Mr. Ackerman's other policies, meet the terms of their divorce judgment. Simply put, to

"short-cut" the adjudication process by sending Banner Life such a letter is not the appropriate method.

> **ANSWER:** At any point, if Michael wanted to exercise his rights, then he could have filed a Motion in The Superior Court of New Jersey Chancery Division-Family Part Somerset County. He ended up doing so and there was a hearing on September 17, 2021. However, as you can see in the Court transcript, after Judge Romankow's decision to have Michael's attorney confirm the validity of the alleged AAA policy, which resulted in Michael withdrawing his motion from the Court, Michael decided to give this Court a try. **This paragraph is also an admission by Michael that the proper jurisdiction for his claim is in The Superior Court of New Jersey Chancery Division-Family Part Somerset County the Somerset County.**

19.     Soon thereafter, Attorney Dey penned an equally off-base and factually-incorrect response to Banner and counsel, which will not be discussed here.

> **ANSWER:** While I deny that the letter was terse or factually incorrect, my attorney did send a letter. (Exhibit J) My attorney was aware of what Michael was attempting to do and again, we needed to make Banner Life aware of it as well to preserve the intent of The Superior Court of New Jersey Chancery Division-Family Part Somerset County's order.

20.     In response to these missives, Banner secured outside counsel, Attorney Colleen Duffy of Tinton Falls, NJ.

> **ANSWER:** I understand that Banner is being represented by outside counsel.

21.     Immediately, counsel and Attorney Duffy began attempts to resolve this situation as quickly as possible. Both engaged in months of very detailed scrutiny to ensure the terms of the divorce were fully satisfied by the AAA policy, and that any response to this situation by Banner would not precipitate litigation from either warring faction.

ANSWER: I am not aware of the content of the discussions.

22.     Undeterred by the obvious truth that her benefits were not being threatened, Michele Roiland, through Attorney Dey, were doing their manipulative best to prevent Banner from fulfilling the ADB for Michael Ackerman. It was all a juvenile game on their part, but it was a life-and-death situation on Michael Ackerman's part.

ANSWER: Denied. Protecting the interests of our children is a juvenile game? Shame on you. Exactly how was I aware my benefits were not being threatened? I was never given proof of the alleged second AAA policy. Did Michael's counsel, Mr. Graziani, advise Michael at any time to submit proof of this policy to me? Did Michael's counsel, Mr. Graziani, call AAA directly and confirm the authenticity and existence of this policy, or did he just take Michael's word that the policy is valid? Is Mr. Graziani aware that Michael has pled guilty to fraud and wiretap in the United States District Court Southern District of New York and is due for sentencing on January 5, 2022? Did Mr. Graziani look over the alleged AAA policy? Is Mr. Graziani aware of the discrepancies evident in this policy? Did AAA offer an explanation as to the discrepancies and inconsistencies in the document they issued? One such discrepancy is the policy number listed as 4046238327 on the first page, but then it is listed as 4046238329 on page 4. There are many other inconsistencies as noted in the attached

document I submitted as part of my certification to the September 17, 2021 hearing. (Exhibit F) I find it odd that in today's day and age of technology, a computer or reputable company such as AAA would make so many errors.

23.     Months went by with no ADB, and Michael Ackerman began wanting to litigate the matter.

**ANSWER:** Again, I find the timing ironic. At this point, I paid the third quarterly premium on May 11, 2021, so the policy was paid through August. Michael suddenly found money to pay for HIS life insurance policy premium in August of 2021? You are stating that all these months he paid for attorney fees, yet he could not uphold his parental responsibility to protect the interests of his children and pay HIS own life insurance premiums? At this point, I would like to note, Michael did not pay his share of Marissa and Michael's tuition for the 2020/2021 school year, nor has he paid his share of their education for this current school year 2021/2022 as he agreed to in our divorce settlement agreement. (Exhibit B) I realize this matter is for The Superior Court of New Jersey Chancery Division-Family Part Somerset County.

24.     Counsel in Ohio suggested the quickest way to a resolution might be to have the Somerset County, NJ issue a declaratory judgment explaining that the AAA policy fully met the terms of the divorce judgment.

**ANSWER:** The hearing was held on September 17, 2021 WITHOUT Michael present in the Zoom hearing with The Superior Court of New Jersey Chancery Division-Family Part Somerset County. If Michael had waited so long and was so concerned, why didn't he appear when he had an opportunity?

25.     Michael Ackerman then contacted his New Jersey attorney, Gary Blaustein, of Basking Ridge, NJ, to file the appropriate pleadings.

**ANSWER:** The hearing was held on September 17, 2021 in The Superior Court of New Jersey Chancery Division-Family Part Somerset County.

26.     Attorney Blaustein contacted Ohio counsel and discussed the matter at length. He then filed the pleading in NJ court and provided service to Michele Roiland, through Attorney Dey.

**ANSWER:** Mr. Dey is not on a rolling payroll. I did not have him on retainer. I paid for his service as needed. Mr. Blaustein assumed incorrectly that Mr. Dey was hired as my attorney. I was never directly served with the Motion or given notice of the Motion. I believe I was entitled to a certified document. I found out about the hearing on Tuesday, September 14, 2021, via email sent from The Superior Court of New Jersey Chancery Division-Family Part Somerset County. It was on that day I was informed I had to appear on Friday, September 17, 2021. I then contacted Mr. Dey and retained his services to assist me in that hearing.  It was at that point I was supplied with the Motion and all accompanying documents. I asked for an extension on Wednesday, September 15, 2021 to review the documents, as this was the first week of the school year. I am a Special Education teacher for the New York City Department of Education, and you can only imagine what the first week back to school was like after the blended learning that took place from the start of the pandemic. Again, I found the timing of Michael's Motion ironic. My request for an extension was denied.

27.	Michele Roiland, through Attorney Dey, balked at the idea of having a hearing over the matter. He convinced the judge in NJ that "this is a scam" by Michael Ackerman.

**ANSWER:** Denied. Since Plaintiff was NOT present at the hearing, he had no first hand knowledge of what transpired. Neither me, nor Mr. Dey "balked" at a hearing. We presented my concerns about the authenticity of the alleged AAA policy, and both Judge Romankow and Michael's lawyer, Mr. Blaustein appeared to agree. I have submitted a copy of Michael's certification to the Somerset County New Jersey Family Court, my certification to the Somerset County New Jersey Family Court, **AND** a transcript of the hearing that took place that day (Exhibit H). I find it egregious that Michael could make such accusations and statements considering he did **NOT** appear that day. As this Court can see from the transcript, Judge Romankow spoke on the matter first, followed by Mr. Blaustein, and then Mr. Dey.

28.	It appears that Due Process was violated by the NJ court, but this topic will not be explored here.

**ANSWER:** Denied and irrelevant to this action. If Plaintiff has concerns about due process violations by The Superior Court of New Jersey Chancery Division-Family Part Somerset County, he needs to address them there so Judge Romankow can make reference to **his** court transcripts, and Judge Romankow can explain and defend **his** decision. Judge Romankow simply asked Mr. Blaustein to contact the AAA company to verify the authenticity and validity of the alleged AAA policy. On page 13, line 17 of the transcript it states:

MR. BLAUSTEIN: Yeah. I mean, obviously if I get on the phone with Banner and
-- no, not Banner, You know, Judge, I know we're on the record but obviously if -- if, um,
my phone call with AAA confirms that this is a scam, there will be a withdrawal of this
application, okay.

THE COURT: I would hope so. (Exhibit H)

29.    Attorney Blaustein then conferred with Michael Ackerman, after which Attorney
Blaustein withdrew the pleading in NJ.

**ANSWER:** Yes, the Motion was suspiciously withdrawn the very next day. (Exhibit
G) After waiting so long, why wouldn't Michael agree to allow his attorney to verify the
validity of the alleged AAA policy? Wouldn't that justify Michael's claim that the
alleged AAA policy existed, was valid, and in effect to replace the Banner policy? It
should also be noted that approximately ten minutes after the hearing, Michael
contacted me via text stating "I won't let you destroy my marriage to Stacey...you won
this battle, but in the end I will die happy unlike you...be well". (Exhibit K) Exactly how
was I destroying his marriage? Was it because Michael is due to be sentenced on
January 5, 2022, and he is looking to set his wife up with money if he is to be
incarcerated? Is he at all concerned about the interests of our children? Michael states he
is terminally ill. Wouldn't a father with a terminal illness seek to ensure his children are
protected in the event of his death? Note the interesting choice of his words "you won
this battle." Was that an admission of another failed attempt at fraud? I have been
accused of warring in this complaint, and it is evident that it is Michael who views this
as a war/battle.

30.	In the meantime, Banner released $60,000.00 to Michael Ackerman as an ADB. It is unclear how Banner arrived at this number.

**ANSWER:** As stated in the Marriage Settlement Agreement, Michael could lower the cost of the policy by no more than $15,000.00 annually. Again, it was Michael's choice to combine the two policies. As it exists today, the Banner Life policy serves two purposes ordered by the court in the divorce; $300,000.00 for our unemancipated children and now $240,000.00 to cover the cost of child support and alimony in the event of Michael's death.

31.	Under the Banner ADB rider Michael Ackerman is allowed a maximum of $450,000.00 (75% of $600,000.00)

**ANSWER:** Michael was NEVER instructed to take out an additional rider that would only serve his needs and interests. Why would he even do that to our children? Additionally, Michael should never have taken out a $600,000.00 policy. He was ordered to take out two policies for $300,000.00 each. He is not entitled to withdraw these funds. That was not the purpose of the policies as ordered by The Superior Court of New Jersey Chancery Division-Family Part Somerset County and agreed to in our divorce settlement agreement. (Exhibit B)

32.	Yet, Banner has only paid out $60,000.00 due to the purposeful and intentional interference to Banner's policy by Michele Roiland and Attorney Dey, and by disregard for the contractual terms of the policy.

**ANSWER:** Again, this policy is in place, as ordered by The Superior Court of New Jersey Chancery Division-Family Part Somerset County, to protect the interests of our children and myself.

33. This debacle has been going on for six months and has now involved four attorneys. It is a lot for a terminally-ill man to face, simply because of the juvenile vitriol and petty game-playing still spewing from Michael Ackerman's divorce.

**ANSWER:** Denied. Michael has been constantly harassing me for over a year. It first started in August 2020 when he tried to manipulate me and the children to sign waivers of beneficiary, under claims of a so-called existing trust of $2 million dollars in our names, so he could name a third party, Coventry, as beneficiary to the Banner policy. If this alleged AAA policy existed then, why not present it in August of 2020? If it exists and is in fact valid and in force today, then why not allow his attorney, Mr. Blaustein, to verify that after the September 17th hearing? Michael brought this "debacle" upon himself and has now filed **two Motions in two different Courts.** .

COUNT 1 (BANNER)-BREACH OF CONTRACT

34. Michael Ackerman has a contractual relationship with Banner through policy number 181415457.

35. Both parties are bound by its terms, which include an ADB of 75% of the policy's face value.

36. Due to his terminal condition, under the terms of the policy, Michael Ackerman is due an ADB of $450,000.00.

37. Nevertheless, Banner determined (after manipulative involvement by Michele Roiland and Attorney Dey) Michael Ackerman is only due $60,000.00 under the ADB.

38. A $60,000.00 benefit is a Breach of Contract under policy number 181415457, which entitles Michael Ackerman to $450,000.00.

**ANSWER:** I do not feel this count pertains to me, so I do not have an answer.

## COUNT II - TORTIOUS INTERFERENCE WITH CONTRACT (ROILAND)- AN INTENTIONAL TORT

39. There exists a valid and enforceable contract between Michael Ackerman and Banner.

**ANSWER:** Well, prior to Michael even obtaining a policy/contract from Banner, there existed a contract, a Marital Settlement Agreement, between me and Michael resulting from our divorce in 2016. (Exhibit B) As was ordered and agreed to in our divorce in The Superior Court of New Jersey Chancery Division-Family Part Somerset County, each of us was to obtain a life insurance policy for our children in the amount of $300,000.00. In addition, Michael was to obtain a second $300,000.00 policy to secure the balance of any unpaid spousal support obligation in the event of his death. Michael agreed in 2016, to pay child support and alimony, which, when the children were emancipated, the child support would become alimony, for nineteen years after the date of the divorce. Michael did not obtain an insurance policy from Banner until January 2018, a year and a half after our agreement. If you look at the Banner policy, the term is 10 years, well short of the 19 years he even agreed to in the event of his death.

40. The Defendant, Michele Roiland, was aware of the contract since its inception.
**ANSWER:** Michael never provided me with a copy of the Banner policy.

41.     Michele Roiland intentionally and unjustifiably induced Banner to breach the contract with Michael Ackerman via manipulative and threatening attorney letters.

**ANSWER:** Denied. I, Michele Ackerman, acting as the mother on behalf of our three children, sought to protect the interests of our children. The letters were not manipulative or threatening. They were simply sent to make Banner aware of The Superior Court of New Jersey Chancery Division-Family Part Somerset County's order.

42.     Banner breached the contract with Michael Ackerman solely because of Ms. Roiland's purposeful attempts to interfere with the contractual relationship between Banner and Michael Ackerman.

**ANSWER:** Denied. Had Banner allowed Michael to claim the ADB for his own selfish gain, he would have gone against an order from The Superior Court of New Jersey Chancery Division-Family Part Somerset County. I, through my attorney, informed Banner that the policy was Court ordered in our Marital Settlement Agreement (Exhibit B).

43.     Ms. Roiland's intentional behavior, inducing Banner to breach its contract, resulted in monetary damages of $390,000.00 and attorney's fees/costs to Michael Ackerman.

**ANSWER:** Denied. As a teacher, I can assure you I do not make an exorbitant salary, nor do I have excess money to spend on ongoing legal fees. Thus, I am representing myself in front of this Court. I find it appalling that Michael was given a $60,000.00 Accelerated Death Benefit and has neglected to pay one penny toward the education of our children for what is now the second year in a row. This speaks volumes about his character. May I please remind this Court, Michael received an

Accelerated Death Benefit payment of $60,000.00 on this policy when I actually paid the premiums for three quarters, each payment being $854.51, (Exhibit D) totaling $2,563.53 because he was going to let the Banner policy lapse. I believe I should be reimbursed the $2,563.53 from the money he received in the Accelerated Death Benefit. Finally, may I also remind the Court of the statements made in the September 17, 2021 hearing at the Somerset County New Jersey Family Court. On pages 12 and 13 of the court transcript (Exhibit H), Judge Romankow stated the Banner policy was to remain as is until an order from **that** Court:

MR. DEY: Okay. And the -- the Banner is going to stay in place until Gary can get that information, right?

THE COURT: Uh, yes.

MR. BLAUSTEIN: Okay. That will be reflected in the order that --

THE COURT: I'm sorry, wait, hold on, what's going to stay in place?

MR. DEY: In other words, yeah, there's not going to be any cancellation of any insurance coverage --

THE COURT: Right.

MR. DEY: -- until then?

THE COURT: Right. I mean, yeah, exactly. So, um, yeah, no, clearly no. Um, so yeah, we can have an order to that effect.

Um, Mr. Blaustein -- Blaustein, you can submit an order with that in there. Um, I mean, I -- I guess we do need an order, just to be safe, I mean, yeah, yeah, we'll have an order just to make sure nothing changes. It shouldn't be. It shouldn't be too complicated. And that's -- that's fine and we'll -- we'll figure it out one way or another, all right. Um, --

MR. BLAUSTEIN: Judge, just to make sure, I'm going to obtain documents from AAA,

THE COURT: Right, --

MR. BLAUSTEIN: -- uh, --

THE COURT: -- cert-- certified blue ribbon, blue ribbon, however you want to term it.

MR. BLAUSTEIN: By 10/8 --

THE COURT: And I --

MR. BLAUSTEIN: -- and that Banner policy to remain status quo pending, uh, further order of the Court.

THE COURT: Right. That sounds good. And by the way, if you could, um, I mean, obviously if, uh, no, never mind. No, that's fine. That's enough.

This case was heard, and a decision was made in The Superior Court of New Jersey Chancery Division-Family Part Somerset County. Michael then immediately withdrew his Motion the next day. Any further disputes or Motions should be filed in the Superior Court of New Jersey Chancery Division-Family Part Somerset County. The Banner policy is to remain status quo and in effect as per the original order from our Marital Settlement Agreement on September 30, 2016. I do not believe the Cuyahoga County Court of Common Pleas has jurisdiction over this matter. This is an obvious attempt by Michael to abuse the legal system, and I am asking the Court to dismiss this case.

Michael is not entitled to any judgment against me. In fact, he owes me money pursuant to the terms of our divorce decree for his unpaid obligation to our children's education. I recognize this Court does not have jurisdiction over this complaint. I was just stating a fact.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

This Court does not have the jurisdiction to decide this case. It should be decided by the Superior Court of New Jersey Chancery Division-Family Part Somerset County

that issued the order regarding the life insurance policies.

## SECOND DEFENSE

This Court does not have personal jurisdiction over me.

## THIRD DEFENSE

The Cuyahoga County Court of Common Pleas is not the appropriate venue for this case given the Plaintiff resides in Lorain County.

## FOURTH DEFENSE

Any damages suffered by Plaintiff were caused solely by the acts of himself or others independent of Michele Ackerman, which bar any recovery against Michele Ackerman.

## FIFTH DEFENSE

Plaintiff may have failed to mitigate his damages.

## SIXTH DEFENSE

Michele Ackerman incorporates by reference any affirmative defenses raised by any other defendant to the extent they are not factually or legally inconsistent with the positions of Defendant Michele Ackerman.

## SEVENTH DEFENSE

Defendant Michele Ackerman incorporates all applicable affirmative defenses available under any relevant law.

## EIGHTH DEFENSE

Any damages awarded to Plaintiff against Michele Ackerman should be offset by the premium amounts Defendant Michele Ackerman paid to Banner to avoid default and by all outstanding amounts owed by Michael Ackerman under the New Jersey divorce decree.

## NINTH DEFENSE

The alleged AAA policy is fraudulent.

## TENTH DEFENSE

Defendant Michele Ackerman reserves the right to supplement or amend her defenses and to add or delete defenses and claims as appropriate following investigation and discovery into Plaintiff's allegations.

WHEREFORE, having fully answered each Count of Plaintiff's Complaint for Damages, Michele Ackerman prays that it be dismissed and she be awarded all other relief, including any sanctions, that the Court deems proper.

## JURY DEMAND

Defendant Michele Ackerman hereby demands a jury trial.

Respectfully submitted,

Michele L. Ackerman

Michele Ackerman
Pro Se

Michele Ackerman
54 Pilot Lane Staten Island, NY 10309
(201) 401-8188
michele.l.ackerman@gmail.com