# EXHIBIT C

Civil Action No. 1:21-cv-2084

**GARY A. BLAUSTEIN, ESQ.**
Attorney ID: 008291984
403 King George Road, Suite 201
Basking Ridge, NJ 07920-2821
Phone: (908) 470-1910
Fax:    (908) 382-3133
Email:gblaustein@blausteinlaw.com
*Attorney for* Defendant

| | |
|---|---|
| **MICHELE L. ROILAND F/K/A MICHELE L. ACKERMANN**<br><br>Plaintiff,<br><br>vs.<br><br>**MICHAEL W. ACKERMANN**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION – FAMILY PART<br><br>SOMERSET COUNTY<br><br>DOCKET NO. FM-18-704-15<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF DEFENDANT DATED SEPTEMBER 7, 2021** |

MICHAEL ACKERMANN, of full age, hereby certifies as follows:

1.   I am the Defendant in the above captioned matter. I make this certification in support of this application to the Court. I am fully familiar with the facts and circumstances set forth herein.

2.   I have been diagnosed with a terminal illness. (Exhibit 1).

3.   The Plaintiff and I were divorced on June 13, 2016. An Amended Final Judgment of Divorce with Marital Settlement Agreement was entered on September 30, 2016. (Exhibit 2).

4. Our marital settlement agreement at Paragraph 1 b. provides for life insurance to secure child support, as follows:

> Each party will maintain a life insurance policy of no less than $300,000.00 naming the unemancipated children as co-beneficiaries and naming the other party as trustee. These policies will remain at $300,000.00 until all three children are emancipated.

5. Our marital settlement agreement at Paragraph 3 c. provides for life insurance to secure alimony, as follows:

> Husband will maintain life insurance coverage in an amount no less than $300,000, naming Wife as beneficiary, to secure the balance of any unpaid spousal support obligation. Husband has the option of reducing the amount of coverage by no more than $15,000.00 annually.

6. I have two life insurance policies, AAA Policy #4046238327 (Exhibit 3) and Banner Life Policy #181415457 (Exhibit 4).

7. Both have face values of $600,000 and are in good standing per the documents provided.

8. The AAA policy is a whole life policy with $600,000 of insurance. The beneficiaries are 50% to the plaintiff and 50% in trust for the three children of our marriage.

9. The Banner policy is a term life policy in the amount of $600,000 with plaintiff as trustee for our children as beneficiary.

10. I clearly have more insurance than is required under the terms of our MSA. It is my desire and intention to designate the AAA policy as the policy covering my obligations under my divorce agreement as this policy fully meets the requirements.

11. The Banner policy provides for an accelerated death benefit of which I have taken $60,356.26.

12. It is my desire to access the remainder of the accelerated death benefit and designate beneficiaries of my choosing of the remaining policy benefits.

13. However, The balance of the accelerated death benefits has been frozen by Banner based upon a letter sent by Plaintiff's attorney Timothy Dey, objecting to any changes to this policy. Exhibit 5.

14. My attorney in Ohio where I now reside responded with a letter attached as Exhibit 6 pointing out the errors in Mr. Dey's letter.

15. Notwithstanding, Banner Insurance has indicated that they need a court order to resolve this dispute and will not let me receive further accelerated benefits without such an order.

16. As such I make the within application to this court, to designate the AAA policy as the insurance policy under the terms divorce agreement, in such amount and with the beneficiaries as provided under the divorce agreement.

17. As for the Banner policy, I request that the court confirm that I am free to do with this policy as I choose to, including but not limited to changing the existing beneficiaries, designating whomever I wish to as beneficiary and obtaining the accelerated death benefit.

18. Additionally, the MSA provides for the reduction of plaintiff's insurance benefit by $15,000.00 per year.

19. I therefore I wish to invoke this provision, and I as such request authorization to reduce Plaintiff's life insurance coverage under the AAA Policy by $90,000, so that the life insurance benefit to plaintiff will now be $210,000.00.

20. I also wish to confirm that I can designate the $90,000.00 remaining balance of coverage under the AAA policy to whomever I desire to.

Certification of Defendant
<u>DOCKET NO. FM-18-704-15</u>

21. Thus, and for the reasons set forth herein, I respectfully request that this Court grant the relief I seek on an emergent basis.

22. The foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: September 7, 2021

michael ackerman (Sep 7, 2021 13:05 EDT)

MICHAEL W. ACKERMANN



**Americare Kidney Institute**

p 216 228 5500   f 216 227 2628

805
Columbia Rd
Suite 101
Westlake
Ohio 44145

1730
W 25th Street
Suite 1E
Cleveland
Ohio 44113

August 10, 2021

1730
W 25th Street
Suite 2E
Cleveland
Ohio 44113

To whom it may concern:

15800
Detroit Ave
Lakewood
Ohio 44107

Michael Ackerman ( DOB 07/12/1969) is a patient of mine and is currently under my care. Michael has
End Stage Renal disease, unfortunately his prognosis is terminal.

Please contact me with any questions or concerns at 216-228-5500.

25200
Center Ridge Rd
Suite 1100
Westlake
Ohio 44145

Thank you,

Wassim El-Hitti

Dr. Wassim El-Hitti, M.D.

EXHIBIT 1

Timothy J. Dey, Esq. Attorney **ID No.: 02698-1999**
222 Route 18 North
East Brunswick, New Jersey 08816
(732) 828-6600
(732) 828-6604 fax
Attorney for Plaintiff



FILED

SEP 3 0 2016

MARY A. MAHLA
JUDGE'S CHAMBERS
SOMERSET COUNTY COURT HOUSE

==============================

| | |
|---|---|
| MICHELE L. ACKERMAN, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION – FAMILY PART SOMERSET COUNTY |
| Plaintiff, | |
| v. | **DOCKET NO.: FM-18-704-15** |
| MICHAEL W. ACKERMAN, | CIVIL ACTION **AMENDED** **FINAL JUDGMENT OF DIVORCE WITH MARITAL SETTLEMENT AGREEMENT ATTACHED** |
| Defendant. | |

==============================

**THIS MATTER** coming to be heard on June 13th 2016 in the presence of Timothy J. Dey, Esq., attorney for Plaintiff Michele L. Ackerman, and Gary A. Blaustein, Esq. attorney for the Defendant Michael W. Ackerman, and the Court having considered the Complaint for Divorce; and,

**IT APPEARING** that the parties were legally married on April 22, 1995 in a religious ceremony in in Brooklyn, New York; and,

**IT FURTHER APPEARING** that Plaintiff has pled and proven a cause of action for divorce based on the statute and such case made as set forth in the Complaint; and,

**IT FURTHER APPEARING** that there have been no previous proceedings between the parties; and,

**IT FURTHER APPEARING** that the Plaintiff and Defendant have been bona fide residents of the State of New Jersey, and have been such bona fide residents for more than one year next preceding the commencement of this action, and that jurisdiction having been properly acquired pursuant to the procedural rules of the State of New Jersey; and

**IT FURTHER APPEARING** that good cause has been shown granting Plaintiff a Final Judgment of Divorce against Defendant; and,

**EXHIBIT 2**

**THEREUPON, IT IS** on this 30th day of Sept , 2016, by the Superior Court of New Jersey, Chancery Division, **ORDERED AND ADJUDGED** that by virtue of the power and authority vested in this Court and the acts of the legislature in such case made and provided does hereby **ORDER AND ADJUDGE** that the Plaintiff Michele L. Ackerman, and the Defendant Michael W. Ackerman be divorce from the bonds of matrimony for the cause stated in the Complaint, the parties are hereby released from the obligations thereof; and,

**IT IS FURTHER ORDERED** that the parties' "Property Settlement Agreement" stated on the record on June 13th 2016 and attached hereto is incorporated into the Judgment of Divorce and shall not merge but shall survive this Judgment of Divorce and the parties are hereby directed to comply with the terms of the Agreement, with the understanding that the court took no testimony as to the merits of the Agreement but finds that the parties entered into it freely and voluntarily, and that it is therefore binding and enforceable; and,

**IT IS FURTHER ORDERED**, that the Plaintiff, whose social security number is xxx-xx-6949, and whose date of birth is March 30, 1971, shall be entitled to resume her premarital name Michelle L. Roiland. Plaintiff certified on the record that she is not resuming her premarital name to escape criminal or civil prosecution; and,

~~Hon. Bradford M. Bury, J.S.C.~~

Hany A. Mawla, P.J.F.P.

I hereby certify this to be
A true and correct copy.

Acting Deputy Clerk, Superior Court

Attorney(s):    **Timothy J. Dey, Esq.**
Attorney Id No.:**026981998**
Law Firm:    **Law Office of Timothy J. Dey, Esq.**
Address:    **222 Route 18 North**
        **East Brunswick, NJ 08816**

Telephone No.:  **(732) 828-6600**
Fax No.:    **(732) 828-6604**
E-mail:    **legal@deylawoffice.com**
Attorney(s) for:

| | |
|---|---|
| **MICHELE L. ACKERMAN** | |
| | Plaintiff(s) |
| vs. | |
| **MICHEAL W. ACKERMAN** | |
| | Defendant(s) |

SUPERIOR COURT OF NEW JERSEY

FAMILY PART- CHANCERY DIVISION

**SOMERSET** COUNTY

DOCKET NO.: **FM-18-704-15**

CIVIL ACTION

# Acknowledgment
# of Service

To: **Gary A. Blaustein, Esq.**

**403 King George Road, Suite 201, Basking Ridge, NJ 07920**

Service of the annexed  **Amended Final Judgement of Divorce with Marriage Settlement**

**Agreement**

is hereby acknowledged this _____ day of _____.

_____

IF EXECUTED BY PERSON OTHER THAN ATTORNEY, ATTACH ACKNOWLEDGMENT

Powered by

©2013 by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510

# PROPERTY SETTLEMENT AGREEMENT

**THIS AGREEMENT** entered into between **Michele Ackerman, ("Wife")** residing at 85 Woodward Lane, Basking Ridge, N.J. 07920, hereinafter referred to as the Wife, and **Michael Ackerman, ("Husband")** residing 75 Hillside Avenue, Bedminster, N.J. 07921, hereinafter referred to as the Husband.

**WHEREAS,** the parties were married on April 22, 1995, in a religious ceremony in Brooklyn, New York; and,

**WHEREAS,** the parties desire to amicably settle and resolve any and all questions regarding alimony, equitable distribution of the assets of the marriage, attorney fees, as well as any and all rights and obligations of any nature and description whatsoever arising out of the marriage relationship, and to memorialize now and forever the verbal record made on June 13th 2016 before the Hon. Bradford M. Bury, J.S.C.; and,

**WHEREAS,** there are three children born of this marriage: Meagan L. Ackerman (D.O.B. 12.20.1997); Marissa M. Ackerman (D.O.B. 03.06.2000); and Michael R. Ackerman (D.O.B. 10.30.2003).

**WHEREAS,** as a result of unfortunate and apparently irreconcilable differences which have arisen as more fully set out by complaint under **Docket No.: FM-18-704-15** the parties wish to live separate and apart; and

**WHEREAS,** the parties fully understand the terms, conditions and provisions of this Agreement and believe the same to be fair, just, adequate and reasonable and, accordingly, both the Husband and Wife, after mature consideration, freely and voluntarily and without coercion, duress or undue influence, accept such terms, conditions, and provisions;

**NOW THEREFORE,** in consideration of the covenants and undertakings set forth herein, the parties covenant and agree as follows:

## 1. CHILD SUPPORT:

a.    Effective upon of execution of this agreement Husband shall begin paying to Wife child support in the monthly amount of NO LESS THAN $650.00 on the first of each month. Child support (like alimony) is to be paid through the Probation Department. This floor will be unaffected by the emancipation of any of the children; child support will only end when all three children are emancipated. Child support may increase however when there is an appropriate change of circumstances as per state law.

b.    Each party will maintain a life insurance policy of no less than $300,000.00 naming the unemancipated children as co-beneficiaries and naming the other party as trustee. These policies will remain at $300,000.00 until all three children are emancipated.

The beneficiary designation on the policy of the insurance required to be maintained by Husband pursuant to this Agreement shall read: Wife, trustee for the benefit of the children under the terms of a Trust Agreement contained in a Matrimonial Settlement Agreement dated August ____, 2016.

The beneficiary designation on the policy of the insurance required to be maintained by Wife pursuant to this Agreement shall read: Husband, trustee for the benefit of the children under the terms of a Trust Agreement contained in a Matrimonial Settlement Agreement dated August ____, 2016.

    c.    The parties will contribute to the cost of the children's extra-curricular activities as follows: FIFTY-SEVEN PERCENT (57%) to be paid by the husband and FORTY-THREE PERCENT (43%) to be paid by the wife. The Order dated May 27th 2016 (heard on May 20th 2016) remains in full force and effect, particularly herein with extra-curricular activities. The Husband has thirty (30) days from June 13th 2016 to pay such costs already incurred by the Wife.

    d.    The parties will share the costs of college as follows, after all scholarships, grants, awards, and other reductions have been factored into the cost: each child will pay one-third (1/3 or 33.33%) of his / her own college costs; the parties are to pay the remaining two-thirds (2/3 or 66.66%). This two-thirds however is to be paid 57% by husband and 43% by wife. The resulting percentages therefore are 33.33% for the attending child, 38% for the husband (66.66% x .57) and 28.66% for the wife (66.66% x .43).

## 2. PARENTING TIME:

    a.    The parties shall share joint legal and physical custody. Wife shall be parent of primary residency ("PPR"). Husband, parent of alternate residence ("PAR"), shall have reasonable and flexible parenting time as agreed to by both parties.

    b.    It is understood that due to the Husband's choice to reside in

Ohio and also due to the children's ages a fixed parenting time schedule is not possible for this PAR. The Father will not exercise overnight parenting time unless agreed to by the child or children.

    c.    The parties agree that they will be able to amicably share holidays with the children by advance arrangement between the parties and children. Parties agree that neither will unreasonably withhold access nor make unreasonable demands of the other or the children in so doing.

    d.    Either party may have up to two consecutive weeks' summer vacation with the children. As with any holidays parties agree that neither will unreasonably withhold access nor make unreasonable demands of the other or the children in so doing. The parties further agree that they will provide the other with no less than thirty (30) days' notice, the itinerary and address of where they will be at all times during vacation.

    e.    The parties hereby agree that neither will disparage either in front of the children. The parties will do nothing or say anything that could lower the other in the eyes of the children or serve to alienate the children from the other parent.

    f.    The parties agree that they will not knowingly expose the children to anyone with a drug or alcohol problem past or present; nor will they expose them to anyone who is a criminal or with a criminal history, probationer, or parolee.

## 3. ALIMONY:

Each party agrees understands the holdings in Lepis vs. Lepis, 83 N.J. 139 (1980) and Crews v. Crews, 164 N.J. 11 (2000) with regard to any change of

circumstances. The parties have specifically negotiated alimony to run for nineteen (19) years from the date of this agreement. This will be deemed "limited term" alimony as the parties' marriage was just short of twenty years in length. Husband stipulates that he will be able to maintain the alimony amounts under any and all circumstances, and that this agreement was and is conditioned thereon.

a.  Husband will pay Wife $650.00 per month until all three (3) children are emancipated. After all three children are emancipated alimony will be $1,300.00 per month. Alimony will be tax-free to the Wife; Husband will therefore not be able to write off any amounts paid to Wife as alimony.

b.  All alimony will be paid through Probation. Until Probation has set up the account Husband will make payments directly to Wife by sending payment to Wife, or Wife's counsel.

c.  Husband will maintain life insurance coverage in an amount no less than $300,000, naming Wife as beneficiary, to secure the balance of any unpaid spousal support obligation. Husband has the option of reducing the amount of coverage by no more than $15,000.00 annually.

d.  Alimony will terminate upon either the remarriage of Wife or death of either party, or cohabitation as per New Jersey law.

## 4. TAX EXEMPTION:

The Wife as parent of primary residence will claim two children on her annual tax returns and Husband one until such time as the first child is emancipated. At that time the parties will each claim one child as an exemption. When there is only one child left unemancipated the parties will

alternate claiming that child; beginning with Wife claiming the child the first year of this occurrence.

It is further understood that to ensure receiving the full benefit of each tax exemption the party so claiming any child on his / her taxes will be required to have at least $25,000.00 in actual (not imputed) annual income.

## 5. HEALTH INSURANCE:

Wife shall pay the first $250.00 of unreimbursed medical bills of the children, thereafter the parties agree to split the cost of health insurance and any unreimbursed medical bills as 57% Husband and 43% Wife. Wife has currently procured health insurance on behalf of the parties for the children through N.J. KidsCare.

## 6. EQUITABLE DISTRIBUTION:

**(a) Automobiles:**

Wife currently has no vehicle titled solely in her name. Wife has been using a 2013 Kia Optima while Husband has been using the 2012 Kia Sorento. The parties agree that the Husband shall add Wife's name to the Kia Optima and remove his name from the title of the Kia Optima when that loan is paid off; leaving it solely in Wife's name at that time.

**(b) Marital Debt:**

The parties represent there is no existing debt; the parties shall indemnify and hold each other harmless as to any future debts in each other's name.

**(c) Bank Accounts:**

Each party shall keep any and all savings and/or checking accounts in their own name. The parties further agree by signing this agreement that they have closed any joint accounts and divided the proceeds to their satisfaction. Any property and or bank accounts in the children's name shall remain that way.

**(d) Marital Home:**

The parties own no real estate.

**(e) Furniture / Personalty:**

The parties agree that they have divided all personalty, including but not limited to household effects from the former marital home.

**(f) Miscellaneous:**

The parties represent that there is no other property to be equitably divided. By signing this agreement both party acknowledge under the punishments for fraud and perjury that neither has any other realty or personalty of any type including but not limited to retirement vehicles of any type, no monies / awards payable as the result of any litigation, no businesses or proceeds therefrom in whatever form paid or payable in the future.


7. <u>PENSION / RETIREMENT PLANS</u>:

The Husband represents that he has no pension, 401K, IRA, nor any other retirement vehicle of any type from any source (self, employer, etc.) including but not limited to his prior employer UBS. The Wife represents that she has no pension, 401K, IRA, nor any other retirement vehicle of any type from any source. Husband and Wife both recognize that by signing this

agreement that he/she is subject to civil and criminal penalties for any knowing misrepresentations.

## 8. COUNSEL FEES:

The parties will be responsible for his / her own counsel fees incurred in the within divorce proceeding.

## 9. NO WAIVER:

In the event that either party defaults with respect to this or any other payment or obligation prescribed in this settlement agreement, and such default is not remedied within reasonable time of written demand for cure, the defaulting party agrees to reimburse the other party for any and all reasonable costs and expenses incurred to remedy same, including reasonable attorney fees made necessary by default and / or failure to cure. Payment of reasonable costs, expenses, and attorney fees, are predicated upon a decision in favor of the non-defaulting party.

## 10. RELEASES:

Subject to the provisions of this Agreement, each party hereby releases and discharges the other and their respective heirs and assigns from all causes of action, claims, rights or demands whatsoever in law and equity which either of the parties each had or now has, with the exception of any cause or causes of action for divorce or for the enforcement of the terms of this Agreement. Each of the parties shall, from time to time, at the request of the other, execute, acknowledge and deliver to the other party any and all further

instruments that may be reasonably required to give full force and effect to this Agreement.

## 11. SUBSEQUENT DIVORCES:

Nothing herein contained shall prevent either the Husband or the Wife from maintaining an action for absolute divorce in any jurisdiction in which either one of them may have the legal right and desire to do so and this Agreement may be introduced in evidence and incorporated in any Judgment that may be entered in any such action in any event, this Agreement shall not merge in such judgment but shall survive such judgment.

## 12. DOWER AND COURTESY:

Except as herein otherwise provided, each party may dispose of his or her property in any way and each party hereby waives and relinquishes any and all right he or she may now have or hereafter acquire under the present or future laws of any jurisdiction, as a surviving spouse under the statutes now or hereafter in effect in any jurisdiction in the property and estate of the other, including, but not limited to, a distributive share in the event of intestacy, the right of election to take against any last will and testament of the other, the right of election to take against testamentary substitutes, homestead rights, the right to act as administrator or executor or other fiduciary, courtesy, dower, widow's allowance, elective share, equitable distribution, and community property.

The parties do further waive, relinquish, and release any and all rights which they may acquire by reason of their marriage in any property owned by the other upon the other's death, including, but not limited to, dower,

courtesy, homestead rights, equitable distribution, and community property. The parties do further mutually agree to refrain from any action or proceeding which may tend to void or nullify to any extent, or in any particular, the terms of any last will and testament, or of any trust or testamentary substitute created by the other, and the parties further agree not to contest or oppose the probate of any last will and testament executed by the other.

### 13. ENTIRE AGREEMENT:

This Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

### 14. MODIFICATION OR WAIVER:

A modification or waiver of this Agreement, or any provisions herein shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature as per Paragraph Nine.

### 15. DISPUTES:

In the event of any dispute arising out of this Agreement or the performance thereof, the Husband and Wife agree that all attempts should be made between them to resolve said disputes by mutual consent before using the courts for any determination.

## 16. <u>SITUS</u>:

All matters pertaining to the validity, construction and effect of this Agreement shall be governed under the laws of the State of New Jersey.

## 17. <u>DISCLOSURE AND DISCOVERY</u>:

The parties understand and acknowledge that they were advised of their right to pursue formal discovery as to the income and assets of each other, that they are entitled to full and complete disclosure of such information. The parties acknowledge and represent that they are satisfied that this agreement represents a fair and equitable distribution thereof. The parties swear and aver that this Agreement, therefore, constitutes a full and complete description of any and all assets known to the parties at the time of its negotiation and execution, as well constitutes a fair and satisfactory distribution of the assets and liabilities of the parties. It is further agreed and understood that any assets that have not been made known to the other party, whether purposely or not, remain subject to equitable distribution, and that intentionally misrepresenting ones' assets may further expose that party to criminal as well as civil remedies including additional attorney's fees.

## 18. <u>WAIVER OF CLAIM</u>:

Each party represents the warrants to the other that he / she will not incur any debts or obligations for which the other party or the other party's estate may be liable. He / she shall solely be responsible for such debts and if the other party is called upon to make any payment or contribution towards the same, the responsible party shall indemnify and hold the other party

harmless from any obligation thereon. Except as otherwise herein expressly provided, the parties shall and do hereby mutually remise, release and forever discharge each other from any and all suits, actions, debts, claims, demands and obligations whatsoever, both in law and in equity, that either of them ever had, now has, or may hereafter have against the other upon or by reason or any matter, cause or thing up to the date of the execution of this agreement. Except as herein otherwise provided, each party may dispose of his or her property in any way, and each party hereby waives and relinquishes any and all rights he or she may have or hereafter acquire under the present or future laws of any jurisdiction, to share in the property of the estate of the other as a result of the marital relationship, including, without limitation, dower, curtesy, right to equitable distribution under **N.J.S.A. 2A: 34-23**, statutory allowance, widow's allowance homestead rights, right to take intestacy, right to take against the will of the other's estate.

## 19. INTRODUCTION OF THIS DOCUMENT INTO A MATRIMONIAL ACTION:

This Property Settlement Agreement can be introduced into evidence and will be incorporated into the Judgment of Divorce that was entered on June 13th 2016 before the Hon. Bradford M. Bury, J.S.C.. This Property Settlement Agreement shall not merge in such judgment, but shall survive judgment.

## 20. ADVICE OF COUNSEL:

Both parties having the opportunity to secure the advice of independent counsel, Plaintiff-Wife has been represented by Timothy J. Dey, Esq., and Defendant-Husband has been represented by Gary A. Blaustein, Esq., are satisfied that they have been able to reach a fair and equitable resolution of all matters related to the dissolution of their marriage.

The parties have also taken advantage at times of the opportunity to negotiate directly with each other without the aid of counsel.

**IN WITNESS WHEREOF** the parties hereto have hereunto affixed their hands and seals on the dates below.

_Michele L. Ackerman_
Michele L. Ackerman, Plaintiff

_Michael W. Ackerman_
Michael W. Ackerman, Defendant

DATED: _9-6-16_

DATED: _8-22-16_

WITNESS: _Kristen Anne Breault_ 9/6/16

KRISTEN ANNE BREAULT
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JANUARY 31, 2017.

Timothy J. Dey, Esq.
Attorney for Plaintiff

Gary A. Blaustein, Esq.
Attorney for Defendant

DATED: _9/12/16_

DATED: _8/22/16_


**Life Insurance Company**

**POLICY 4046238327**
**- POLICY SUMMARY**

| | |
|---|---|
| **OWNER'S NAME** | Michael W. Ackerman |
| **COVERAGE TYPE** | Guaranteed Issue Whole Life Insurance |
| **COVERAGE AMOUNT** | $600,000 |
| **EFFECTIVE DATE** | 7/29/2019 |
| **BENRFICIARY** | Michele Roiland Ackerman 50%. 50% in trust for Meagan Ackerman, Marissa Ackerman and Michael R. Ackerman |
| **RIDERS** | None |
| **BILLING METHOD** | Credit Card Billing |
| **BILLING FREQUENCY** | Monthly |
| **PAYMENT DUE ON 9/29/2021** | $389.00 |
| **AUTOMATIC PAYMENT ON 9/29/2021** | $389.00 |
| **TOTAL AMOUNT DUE\*** | $389.00 |

*Includes your current payment due, any past due amounts, and credits to your account.

Make a Payment  Manage Automatic Bill  Payment  Policy  Summary Update Billing Frequency

Payment  History

AAA Life Insurance Company

- About Us

- Careers

- Privacy Policy

- Terms & Conditions

- Site Map

Life Insurance underwritten and annuities offered by AAA Life Insurance Company, Livonia, Michigan. AAA Life Insurance Company is licensed in all states except NY. CA Certificate of Authority #07861. Products and their features may not be available in all states. © 2021 All Rights Reserved.

EXHIBIT 3

**AAA Insurance
Company**

17900 N. Laurel Park Dr.
Livonia, MI 48152
(800) 624-1662

## NOTICE REGARDING REPLACEMENT
## REPLACING YOUR LIFE INSURANCE POLICY OR ANNUITY?

Are you thinking about buying a new life insurance policy or annuity and discontinuing or changing an existing one? If you are, your decision could be a good one-or a mistake. You will not know for sure unless you make a careful comparison of your existing benefits and the proposed policy or contract's benefits.

Make sure you understand the facts. You should ask the company or agent that sold you your existing policy or contract to give you information about it.

Hear both sides before you decide. This way you can be sure you are making a decision that is in your best interest.

ALDM-23017 -015-XX

# POLICY SCHEDULE PAGE

**INSURED:** MICHAEL ACKERMAN

**POLICY EFFECTIVE DATE:** 7/29/2019

**POLICY NUMBER:** 4046238327

**OWNER:** MICHAEL ACKERMAN

**ISSUE AGE: 51**

**GENDER:** Male

**INITIAL PREMIUM:** $389.00*

**PAYABLE:** Monthly

**Ohio Department of Insurance Telephone Number: 800-686-1526**

## DEATH BENEFIT

Benefits for Death Occurring During

First Policy
Year 2019
And Thereafter
(Face Amount):          $600,000

If death occurs as the result of an accident at any time while this Policy is in force, the face amount shall be payable.

## ADDITIONAL RIDERS/ENDORSEMENTS

| Benefit Type | Benefit Amount | Annual Premium | Effective Date | Expiration Date |
|---|---|---|---|---|
| Travel Accident Endorsement | $600,000 | *N/A* | | |

Base Annual Premium

          $4,668.00

Total Annual Premium

          $4,668.00*

**\* $1060 Annual Fee Waived**
   **An administrative fee of *$3.00/month* will be added for Direct Monthly Billing**

Address and phone number for Premium payment, inquiries and notification of claim:
**AAA Life Insurance Company**
**17900 N. Laurel Park Drive**
**Livonia, MI 48152**
**1-800-621-1667**

Print Date: *03/29/2021*

## POLICY SCHEDULE PAGE

### (Continued)

POLICY NUMBER: 4046238329      INSURED NAME: MICHAEL ACKERMAN

## TABLE OF POLICY VALUES

| CALENDAR | END OF POLICY | CASH OR LOAN | AMOUNT OF REDUCED PAID-UP | LENGTH OF EXTENDED TERM INSURANCE N/A |
|----------|---------------|--------------|---------------------------|----------------------------------------|
| 2019 | N/A | Variable Whole Life | 4,668 Annual | |

Mortality Table: 2001 Commissioners Standard Ordinary Composite **ALB** Ultimate Table with Gender Distinction

The above values are reduced by the amount of any Debt. Upon Your request, We will supply values for any years not shown. When You have paid Premium for part of a Policy Year, We calculate the values to fit the amount paid.

Blank Page

# DEFINITIONS

**As used in this Policy, the following terms mean:**

Accidental Injury - An accidental bodily injury sustained by the Insured which is a direct result of an accident.

**Age** - The Insured's Age as of their last birthday.

**Assignment** - The transfer of the Owner's rights and privileges to another person or entity. Actual ownership does not transfer.

**Attained Age** - On any given date, the Insured's Age on the most recent Policy Anniversary. During the first Policy Year, the Insured's Attained Age is his or her issue Age.

**Beneficiary** - The person(s) or entity(ies) named during the enrollment process, or in the most recent change recorded by Us, who may be entitled to receive the Death Benefit.

**Death Benefit** - The amount We pay upon the death of the Insured while this Policy is in force.

**Debt** - The amount of any unpaid policy loan, existing under this Policy at any given time, plus unpaid interest due and accrued.

**Endorsement** - A form attached to this Policy that provides additional benefits without additional charges.

**Grace Period** - The time period in which an overdue Premium will still be accepted. During this period the coverage remains in force. There is no Grace Period for the Initial Premium.

**Home Office** - Our office located at 17900 N. Laurel Park Drive, Livonia, MI 48152.

**Initial Premium** -The first Premium due in consideration for this Policy. We must receive and deposit the Initial Premium before the Policy becomes effective.

**Insured** - The person whose life is insured under this Policy as shown on the Policy Schedule Page.

**Owner** - The person or entity that has full rights and privileges to the benefits of this Policy, while the Insured is living.

**Policy** - The document without any additional Riders. Policy also includes all attached Endorsements.

**Policy Effective Date** - The date this Policy becomes effective. It is shown on the Policy Schedule Page. This is the date We use to determine renewal dates.

**Policy Year(s)**, **Policy Anniversary(ies)**, and **Policy Month(s)** - Dates that are measured from the Policy Effective Date.

**Premium** - The amount You are required to pay to Us to keep this Policy in force.

ICC16-6301                                    4

**Proof of Loss** - Documents that provide satisfactory evidence to Us, that the Insured has incurred a loss covered by the Policy, its Riders or Endorsements.

**Rider** - A form attached to this Policy that provides additional benefits for an additional charge. Any Rider attached to this Policy is shown on the Policy Schedule Page.

**Surrender Value** - The Cash Value less any Debt.

We, Our, and **Us** - AM Life Insurance Company at its Home Office.

**You** and **Your** - Refers to the Owner of the Policy.

# GENERAL PROVISIONS

**POLICY EFFECTIVE DATE**
The Policy becomes effective when the following conditions are met:
1. You complete the enrollment process; and
2. We receive and deposit Your Initial Premium.

This Policy is void and there is no coverage if the Insured is not living on the Policy Effective Date.

**ENTIRE CONTRACT**
This Policy is a contract. The whole contract consists of this Policy and any attached Riders or Endorsements. This Policy may not be changed unless an Officer of the Company agrees to the change in writing.

**TERMINATION**
This coverage will terminate when anyone of the following occurs:
2. Thirty-one (31) days after We mail You notice that the total Debt equals or exceeds the Cash Value;
2. The Grace Period ends without payment of a required Premium;
3. The Policy is surrendered;
4. The Insured dies.

**ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS**
All elections, designations, changes and requests must be in a form satisfactory to Us. No election, designation, change or request will take effect until acknowledged by Us in writing. Once acknowledged, the change will become effective on the date the notice of change is signed, unless specified otherwise by the Owner. We will not be liable for payment made or action taken by Us before notice was received at Our Home Office and acknowledged in writing by Us.

**SUICIDE**
If the Insured dies by suicide, while sane or insane, within two (2) years after the Policy Effective Date, the proceeds payable will be limited to the Premium paid less any Debt.

**INCONTESTABILITY**
We will not contest this Policy during the lifetime of the Insured.

**MISSTATEMENT OF AGE OR GENDER**
If the Insured's Age or gender was misstated, their correct Age or gender at the Policy Effective Date will be used to determine:
1. The effective, renewal, or expiration dates of benefits provided by this Policy;
2. The Death Benefit; and
3. Any other rights or benefits under this Policy.

If the Insured's Age or gender was misstated, We will adjust the Death Benefit to be the amount that would have been purchased by the Premium for the correct Age or gender. If the Insured's correct Age is found to be outside the coverage range of the product, the Death Benefit and Premium will be extrapolated to the correct Age.

**NON-PARTICIPATING**
This Policy does not participate in Our earnings or surplus.

**CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS**
This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission, and is issued under the Commission standards. Any provision of this Policy which, on that provision's effective date conflicts with the Commission standards is hereby amended to conform to the Commission standards as of the provision's effective date.

ICC16-6301                                    6

# DEATH BENEFIT

When We receive proof of the Insured's death at Our Home Office, We will pay the Death Benefit to the Beneficiary within thirty (30) days after receipt of Proof of Loss. Payment is subject to the provisions of this Policy. We may require surrender of this Policy.

If the Insured dies while this Policy is in force, We will pay the Death Benefit. We will calculate the amount payable as:

1. The Death Benefit; plus
2. Any benefits provided by Rider or Endorsement which are payable upon the Insured's death; less
3. The amount needed to keep this Policy in force to the end of the Policy month of death, if the Insured dies within the Grace Period; less
4. Any Debt; plus
5. Any Premium paid past the Policy Month of death (beginning with the third Policy Year).

## ACCIDENTAL DEATH

Death that results from an Accidental Injury, The injury and death must occur while the Policy is in force.

## METHOD OF PAYMENT

The Death Benefit will be paid in a lump sum.

A Beneficiary may not assign their interest prior to the death of the Insured or borrow against the benefit amount. A Beneficiary's creditors may not claim any of the benefit amount or interest, unless allowed by law.

## FILING A DEATH CLAIM

To claim the Death Benefit, We may require a fully completed claim form and Proof of Loss.

Proof of Loss for purposes of a Death Benefit claim shall include:

1. A certified copy of the Insured's death certificate; or
2. Other lawful evidence providing equivalent information, and
3. Proof of the claimant's interest in the proceeds.

We may refuse to pay any claim made if the claimant(s) or Beneficiary fail or refuse to provide information We deem necessary to pay the claim. If You or Your Beneficiary needs help in the claim process, contact Our Home Office.

**INTEREST ON PROCEEDS**

Interest accrues and is payable from the date of death. It accrues at the rate applicable to the Policy for funds left on deposit with Us as of the date of death, plus 10 annually beginning 31 calendar days from the latest of:

1. The date We receive due Proof of Loss; or
2. The date We receive sufficient information to determine Our liability, the extent of Our liability, and the appropriate payee legally entitled to the proceeds; or
3. The date all legal impediments to payment of proceeds that are dependent on parties other than Us are resolved and sufficient evidence of such resolution is provided to Us. Legal impediments include, but are not limited to:
   a. The establishment of guardianships and conservatorships;
   b. The appointment and qualification of trustees, executors and administrators; and
   c. The submission of information required to satisfy state and federal reporting requirements.

## BENEFICIARY

A Beneficiary has no rights under this Policy until the death of the Insured.

There are two Beneficiary classes:
1. Primary Beneficiary; or
2. Contingent Beneficiary.

Primary Beneficiary
Michele Roiland Ackerman 50%. 50% in trust for Meagan Ackerman, Marissa Ackerman, Michael R. Ackerman

Contingent Beneficiary
None

If no primary Beneficiary survives the Insured, We will pay the Death Benefit to the contingent Beneficiary. If there is more than one Beneficiary in a class, each will share the Death Benefit equally unless You specify otherwise. The Death Benefit share of any Beneficiary, who dies before the Insured will pass equally to any surviving Beneficiary in that class, unless You state otherwise. If no Beneficiary survives the Insured, the Death Benefit will be paid to the Owner or the Owner's estate.

However, We may pay any Death Benefit up to $100,000 to any relative of the Insured by blood, legal adoption or marriage or any person We consider justly entitled because he or she is named Beneficiary or has incurred expenses for the maintenance, medical attention or burial of the Insured if:
1. The Beneficiary is not competent to give a valid release.
2. The Beneficiary is a minor; or
3. The benefit is payable to the Owner's estate.

If We make payment in good faith, we will not be liable to anyone or any entity for the amount paid.

**CHANGE OF BENEFICIARY**

The Owner may change the Beneficiary, except for an irrevocable Beneficiary, at any time while the Insured is living by sending written notice to Us at Our Home Office. The change of Beneficiary shall take effect on the date the notice is signed, unless specified by the Owner. The change is not valid unless it is received and recorded by Us. If You have named an irrevocable Beneficiary, We will require their written consent before processing any of Your requests.

ICC16-6301                                                    8

# OWNERSHIP AND ASSIGNMENT

**OWNER**

The Owner of this Policy is the person named in the enrollment process of this Policy and in the Policy Schedule Page. While the Insured is living, You have the rights as Policy Owner to:

1. Transfer ownership rights and privileges by Assignment; or
2. Change a Beneficiary during the Insured's lifetime; or
3. Receive any benefit, exercise any right, and use any privilege granted to You by Your Policy; or
4. Agree with Us to change or amend Your Policy.

If You have named an irrevocable Beneficiary, We will require their written consent before processing any of Your requests for ownership changes or Assignment. If the Owner dies before the Insured and no other arrangements have been made with Us, ownership will transfer to the Insured.

**ASSIGNMENT**

An Assignment shall take effect on the date the Assignment is signed, unless specified by the Owner. Assignment of this Policy will be binding on Us only after a copy of the Assignment is received at Our Home Office prior to the death of the Insured. We are not responsible for the validity of any Assignment. No Assignment can be made unless any irrevocable Beneficiary agrees to it in writing.

**CHANGE OF OWNERSHIP**

If You name a new Owner, then any prior designation of an Owner will be void. You must make an ownership change while the Insured is living by sending satisfactory written notice to Us at Our Home Office. The change in Ownership shall take effect on the date the notice is signed unless specified by You. The change is not valid unless it is received and recorded by Us.

# PREMIUM

**PAYING PREMIUM**

The first (1st) Premium is due and payable on or before the Policy Effective Date. The amounts and frequency of the Premium payments are shown in the Policy Schedule Page. Policy Anniversaries occur annually and are computed from the Policy Effective Date.

Premium is payable to Our Home Office.

**GRACE PERIOD**

There is no Grace Period for the Initial Premium. After You pay Your Initial Premium, We allow a Grace Period of thirty-one (31) days for payment of any subsequent Premium. This Policy remains in force during the Grace Period. If death occurs during the Grace Period, any unpaid Premium up to the end of the month of death will be deducted from the Death Benefit. If You fail to pay the Premium due by the end of the Grace Period, the Policy will lapse as of the last Premium due date.

**LAPSE**

If a Premium is not paid by the end of the Grace Period, this Policy will lapse.

All insurance will end when the Policy lapses, unless the Policy has a Surrender Value. If there is a Surrender Value, You may choose to:

1. Continue coverage under the automatic premium loan (APL) provision; or
2. Surrender Your Policy for cash; or
3. Continue it for a reduced amount of paid-up insurance; or
4. Continue it as extended term insurance.

Details of these options are described in the NON-FORFEITURE provision. You have thirty-one (31) days after the Premium due date in which to choose an option.

**REINSTATEMENT**

While the Insured is living, You may request to reinstate this Policy at any time within three (3) years from the last Premium due date and prior to Age 100, unless it has been surrendered for cash. We will reinstate the Policy once We receive:

1. Your written request within three (3) years after the last Premium due date; and
2. Payment of all overdue Premium with interest at an annual rate of 6 per annum; and
3. Payment, in advance, of two (2) additional monthly Premiums.

**CONTINUATION OF INSURANCE**

Insurance coverage under this Policy and any Benefits provided by Rider will be continued in force until terminated as provided in the Grace Period provision.

## SURRENDER

You may surrender this Policy for its Surrender Value at any time while it is in force. The request must be in writing.

We may postpone payment of the Surrender Value for up to six (6) months after We receive Your request unless the surrender is to pay Premium for Policies with Us.

If You request a surrender within thirty (30) days after a Policy Anniversary, the Surrender Value will not be less than the Surrender Value on that anniversary less any Debt.

**SURRENDER VALUE**

The Surrender Value of this Policy is the Cash Value of this Policy adjusted to the surrender date, as provided in the basis of values, less any Debt.

## NON-FORFEITURE OPTIONS

You may choose a non-forfeiture option within thirty-one (31) days after an unpaid Premium was due, provided the Insured is living. During this thirty-one (31) day period, the Surrender Value will stay the same as on the first day of the period. If You do not choose a non-forfeiture option within 60 days after the due date of the Premium, the reduced paid-up insurance non-forfeiture option will apply.

Any benefit from an attached Rider will not be included in the coverage provided by the non-forfeiture options below.

**CASH SURRENDER OPTION**

Policy surrender is the permanent cancellation of the Policy. Only the Owner can surrender the Policy, subject to the right of any assignee or irrevocable Beneficiary. The Policy can be surrendered within thirty-one (31) days of any Premium due date, or any time while in effect as extended term insurance or reduced paid-up insurance. The Cash Value of extended term insurance or reduced paid-up Insurance is the net single Premium for the remaining insurance benefits less Debt. If surrender occurs within thirty-one (31) days after a Policy Anniversary, the Cash Value shall be the Cash Value as of such Anniversary.

We will pay the Surrender Value on the date of surrender. We have the right to delay a cash surrender for up to six (6) months.

**EXTENDED TERM INSURANCE SURRENDER OPTION**

You may continue this Policy as paid-up extended term insurance. The amount of coverage will be the present insurance amount less any Debt.

The Surrender Value will be used as a net single Premium to determine the length of coverage. The net single Premium will be based on the Attained Age of the Insured on the unpaid Premium's due date. Coverage will start from the unpaid Premium's due date. You may surrender the extended-term Policy for the then current Surrender Value.

## REDUCED PAID-UP INSURANCE

Subject to Our minimum requirements, You may continue this Policy as reduced paid-up insurance with no further Premium due. The reduced paid-up insurance is determined by applying the Surrender Value as a net single Premium based on the Insured's Attained Age on the date the reduced paid-up insurance coverage starts. Coverage will start from the unpaid Premium's due date. The Cash Value will first be used to payoff the loan. You may surrender this reduced paid-up insurance later for the then current Surrender Value.

## BASIS OF VALUES

Values for Your surrender options are shown in the TABLE OF POLICY VALUES. The Cash Surrender Values for this Policy are never less than the minimums required on the date of issue by the NAIC Standard Non-forfeiture Law for Life Insurance, Model #808. A detailed statement of the method of computing values has been filed with the Interstate Insurance Product Regulation Commission. The Cash Value of any paid-up insurance is the net single Premium for such insurance based on the Insured's Attained Age on the surrender date.

Our computations assume:
1. Interest and Debt
2. Death Benefit payable immediately on the death of the Insured; and
3. Premium payable annually.

Cash Values, paid-up insurance values, and extended term insurance values are based on the Mortality Table as shown on the TABLE OF POLICY VALUES.

## LOANS

You may use the Cash Value without ending the insurance coverage by asking Us for a loan provided this Policy has not been continued as Extended Term Insurance as defined under the Non-Forfeiture Options section. This Policy is the only security We need.

## OBTAINING A LOAN

You may obtain a loan from Us if:
1. This Policy is in force; and
2. This Policy has enough loan value; and
3. Premium has been paid to the end of the Policy Year for which this Policy first has a Cash Value.

You may ask for a loan at any time. We have the right to wait six (6) months before processing the loan, unless You will use it to pay Premium for this Policy.

## AUTOMATIC PREMIUM LOAN (APL)

Under the APL provision, We will automatically pay any Premium not paid within a Grace Period by charging it as a loan against Your Policy. Interest on the loan will be charged at the loan interest rate (shown in the TABLE OF POLICY VALUES) from the Premium due date. If the loan value is not large enough to pay the entire Premium due, plus interest, the loan will be for the next smaller mode of payment the loan value allows, down to a pro rata portion of a monthly Premium. An APL is subject to provisions of the LOANS provision.

If You use the APL provision and later decide to cancel it, You may do so at any time by written request. A cancellation request will not affect any loan made before the cancellation took effect. We may require You to send Us this Policy for endorsement of an APL request.

**AMOUNT OF LOAN AVAILABLE**

You may borrow any amount up to the loan value of this Policy. The loan value is equal to:

1. The Cash Value of this Policy at the end of the current year; less
2. Any existing Debt; less
3. The interest to the next Policy Anniversary; less
4. Any unpaid Premium to the end of the year.

**POLICY LOAN INTEREST**

We will charge You interest each year on the amount of the loan principal. Interest will accrue daily at the daily equivalent of the effective annual rate. The effective annual rate of interest We will charge You is the Policy Loan Interest Rate. Any unpaid accrued interest will be due on each Policy Anniversary or upon the earlier of:

1. The surrender of this Policy.
2. The death of the Insured; or
3. The date this Policy terminates.

Any interest not paid when due will be:

1. Added to the loan principal; and
2. Charged interest as any other loan.

**REPAYMENT OF LOANS**

You may repay all or part of a loan while the Insured is alive and this Policy is in force.

**EXPIRATION**

Whenever the loan amount, with interest, is more than the Cash Value, We will give You thirty-one (31) days to make a payment to make the loan value positive. If payment is not received, Your Policy will lapse thirty-one (31) days after We have mailed notice to Your last known address, and to that of any recorded assignee.

# AAA INSURANCE COMPANY

(A Stock Company)
**17900 N. Laurel Park Drive, Livonia, MI 48152**
**1-800-624-1662**
**www.aaalife.com**

## TRAVEL ACCIDENT ENDORSEMENT

This Endorsement is a part of the Policy to which it is attached. It is subject to all provisions and definitions of the Policy unless stated otherwise in this Endorsement.

**EFFECTIVE DATE:** The Effective Date of this Endorsement is shown on the Policy Schedule Page. This Endorsement is in effect only while the Policy remains in effect.

If We reinstate coverage under this Endorsement, the Effective Date of the reinstated coverage will be shown on a new Policy Schedule Page.

**EXPIRY DATE:** The date coverage ends under this Endorsement is shown on the Policy Schedule Page.

**ACCIDENTAL DEATH:** Death which results directly from accidental bodily injury.

**INJURY:** An accidental bodily injury sustained by the Insured which is a direct result of an accident, independent of disease or bodily or mental illness or infirmity or any other cause, and which occurs while this Endorsement is in force.

**INSURED:** The person named as the Insured on the Policy Schedule Page.

**BENEFIT:** If the Insured dies due to a Covered Travel Accident, We will pay the Travel Accident Benefit amount shown on the Policy Schedule Page to the Beneficiary. The death must occur within 180 days after the accident and We must receive proof that the Insured's death was accidental. We will make payment after receiving this proof and the written claim notice. We will pay this amount as part of the total death benefit of the Policy.

We have the right, at Our own expense, to request an autopsy unless forbidden by law.

## EXPOSURE AND DISAPPEARANCE

**EXPOSURE:** We will pay Benefits if You are unavoidably exposed to the elements because of a Covered Travel Accident which results in the disappearance, sinking or damaging of any conveyance covered by this Endorsement, in which You were riding, and You die as a result of such exposure.

**DISAPPEARANCE:** If Your body has not been found within 52 weeks after the date of a Covered Travel Accident, it will be presumed, provided there is no evidence to the contrary, that You died as a result of the accident.

ICC12-6204TA

Blank Page

# DEFINITIONS

**BICYCLE** - A non-motorized vehicle propelled manually by pedals, having two tandem wheels or two parallel wheels, and one or two forward or rear wheels. The vehicle must also have a seat, handlebars for steering, and manufacturer-installed brakes.

**COMMON CARRIER** - A public form of transportation, where a fee is usually paid to ride as a passenger, not as a member of the crew or driver of the vehicle for hire, which includes but is not limited to buses, trains, ships, subways, taxis, or ferries. Ambulances, medical transport vehicles or chartered vehicles are not considered Common Carriers.

**GOLF-CART** - A motorized vehicle used for carrying people and their golf equipment around on a golf course.

**PRIVATE PASSENGER AUTOMOBILE** - A motor vehicle intended for personal use and licensed by a state as a private vehicle. Included in the category of Private Passenger Automobile are:

1. self-propelled motor homes;
2. vans;
3. sport utility vehicles
4. trucks with a towing capacity of 17,000 pounds or less.

Private Passenger Automobile does not include:

1. automobiles licensed to carry passengers for hire;
2. automobiles or trucks primarily used for commercial purposes; or
3. motorcycles, mopeds, motor scooters, all-terrain vehicles, snowmobiles or jet skis.

**SCHEDULED AIRLINE** - An airplane licensed to operate as a public form of transportation on a regularly scheduled basis, where a fee is usually paid to ride as a passenger.

## COVERED TRAVEL ACCIDENTS

**SCHEDULED AIRLINE:** As a passenger and not as a pilot or crew member, while you are riding in an aircraft operated on a regularly scheduled flight by:

1. a Scheduled Airline of United States registry holding the proper license and certification issued by the United States Government;
2. a Scheduled Airline of foreign registry holding a Policy, license or similar authorization for scheduled air transportation by the governmental authorities having jurisdiction for civil aviation in the country of registry;
3. a transport type aircraft operated by the United States Armed Forces, the Department of National Defense (Canada), the Department of Transport (Canada) or the Royal Air Force Air Support Command of Great Britain.

**COMMON CARRIER:** While riding as a passenger in any public land or water conveyance provided by a Common Carrier primarily for passenger service. You cannot be an operator or member of the crew of the Common Carrier.

**AUTOMOBILE:** While driving or riding in a Private Passenger Automobile.

**PEDESTRIAN:** When, as a pedestrian, You are struck by any motor vehicle legally operated on the public streets and highways.

**BICYCLE:** When riding a Bicycle.

**GOLF-CART:** When driving or riding in a Golf-Cart on a gOlf course, or on any public or residential road where the law permits a Golf-Cart to be driven.

ICC12-6204TA

2

## EXCLUSIONS AND LIMITATIONS

This Endorsement does not provide benefits for death occurring as a result of any of the following:

1. any attempt at suicide, or intentionally self-inflicted injury, while sane or insane;
2. an act of war, declared or undeclared;
3. intoxication as defined by the jurisdiction where the Covered Accident occurred.
4. voluntary intake or use by any means of
   a. any drug unless administered on the advice of a physician and taken in accordance with the physician's instructions;
   b. poison, gas or fumes;
5. directly or indirectly from active participation in a riot, insurrection, or terrorist activity. An exclusion for riot or insurrection is limited to instigation and does not include civil commotion, disorder, injury as an innocent bystander, or injury for self defense;
6. committing or attempting to commit a felony.
7. disease or infirmity of mind or body, or medical or surgical treatment for such disease or infirmity.
8. an infection not occurring as a direct result or consequence of the accidental bodily injury;
9. operating, descending from or riding in any type of aircraft. This does not apply to a fare paying or pass holding passenger with no duties on board an aircraft commercially licensed to transport passengers for hire;
10. riding any motorized vehicle or bicycle:
    a. in a competitive sport;
    b. to race or test on any speedway, race track or proving ground;
    c. for stunt riding, jumping, aerobatics or similar activity;
11. while the insured is incarcerated;
12. rock or mountain climbing;
13. parasailing, ballooning, soaring, ultralight, skydiving, parachuting, and (aeronautics) hang-gliding;
14. bungee jumping.

**NONFORFEITURE VALUES:** This Endorsement does not have Cash Values or Loan Values.

**TERMINATION**
This Endorsement will terminate on the earliest of:
1. its Expiry Date which is shown in the Policy Schedule Page;
2. the date when the Policy this Endorsement is attached to terminates; or
3. when the Owner requests that We cancel it by notifying Us in writing.

Termination of this Endorsement will not affect the payment of a claim submitted for a travel accident that occurred while this Endorsement was in force.

Signed for AAA Life Insurance Company at its Home Office in Livonia, Michigan

**John W. DuBose, III, President**

**Latrina M. Edwards, Secretary**

3.

# *Life Insurance*  *Company*

(A Stock Company)
**Home Office:**
**17900 N. Laurel Park Drive**
**Livonia, MI 48152**
**1-800-624-1662**
**www.aaalife.com**

**GUARANTEED ISSUE BENEFIT AND WHOLE LIFE POLICY**
Beginning with the first Policy Year, the face amount is payable as the Death Benefit. This
Includes Accidental Death or non-accidental Death
Premium is payable to Age 100.
Non-Participating.

Residents of Ohio who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Ohio Life and Health Insurance Guaranty Association. The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Ohio Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Ohio. You should not rely on coverage by the Ohio Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. You should check with your insurance company representative to determine if you are only covered in part or not covered at all.

Insurance companies or their agents are required by law to give or send you this notice. *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.*

Ohio Life and Health Insurance Guaranty Association
5005 Horizons Drive, Suite 200 Columbus, Ohio 43220

Ohio Department of Insurance
50 West Town Street
Third Floor - Suite 300
Columbus, Ohio 43215

The state law that provides for this safety-net coverage is called the Ohio Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the guaranty association.

## COVERAGE

Generally, individuals will be protected by life and health insurance guaranty association if they live in Ohio and hold a life or health insurance contract, annuity contract, unallocated annuity contract; if they are insured under a group insurance contract, issued by a member insurer; or if they are the payee or beneficiary of a structured settlement annuity contract. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

- the insurer was not authorized to do business in this state; or

- their policy was issued by a medical, health or dental care corporation, an HMO, a fraternal benefit society, a mutual protective association or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus.

- any policy of reinsurance (unless an assumption certificate was issued);

- interest rate yields that exceed an average rate;

- dividends;

- credits given in connection with the administration of a policy by a group contract holder; or

- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to payout The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for anyone insured life, the association will pay a maximum of $600,000, except as specified below, no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. The association will not pay more than $100,000 in cash surrender values, $500,000 in major medical insurance benefits, $300,000 in disability or long-term care insurance benefits, $100,000 in other health insurance benefits, $250,000 in present value of annuities, or $600,000 in life insurance death benefits. Again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages, the association will pay a maximum of $600,000, except for coverage involving major medical insurance benefits, for which the maximum of all coverages is $1,000,000.

*Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the Act:* For unallocated annuities that fund governmental retirement plans under §§401, 403(b) or 457 of the Internal Revenue Code, the limit is $250,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual, except as noted above. For covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contract holder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

**AAA LIFE INSURANCE COMPANY**
17900 N. Laurel Park Drive, Livonia, MI 48152
Phone: 1-800-624-1662

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION
Prepared on: March 29, 2021

**Insured:** MICHAEL ACKERMAN
$4,668.00

| Benefit Description | Benefit Amount | Expiry Date | Annual Premium |
|---|---|---|---|
| Graded Benefit Whole | | | $4,668.00 |
| Life Insurance | $600,000 | | |
| Travel Accident | | | None |
| Endorsement | $600,000 | | |

| | | | |
|---|---|---|---|
| **Policy Number:** | 4046238327 | **Issue Age:** | 51 |
| **Issue Date:** | 07/29/2019 | **Sex:** | male |
| **Premium Frequency:** | Monthly | **Modal Premium:** | $389.0 |
| **Policy Loan Interest Rate:** | 6.00 per year in arrears | | |

| Policy Year | Annual Premium | Accumulated Cash Values | Insured Death Benefit |
|---|---|---|---|
| 1 | $4,668.00 | $0 | $600,000 |
| 2 | $4,668.00 | $3200 | $600,000 |
| 3 | $4,668.00 | $6400 | $600,000 |
| 4 | $4,668.00 | $10,000 | $600,000 |
| 5 | $4,668.00 | $11,900 | $600,000 |
| 10 | $4,668.00 | $14,525 | $600,000 |
| 20 | $4,668.00 | $18,425 | $600,000 |
| Age 65 | $4,668.00 | $25,375 | $600,000 |
| Age 100 | $4,668.00 | $48,475 | $600,000 |

## LIFE INSURANCE COST INDICES PER $1,000 OF DEATH BENEFIT

| | 10 YEAR | 20 YEAR |
|---|---|---|
| **Surrender Cost Index** | 19044.00 | 29385.00 |
| **Net Payment Index** | 17855.71 | 39990.00 |

The cost indices and the projected values shown above reflect the deduction of charges for all additional benefits or riders issued with the policy as shown in this statement. An explanation of the intended use of these indices is provided in the Life Insurance Buyer's Guide. These indices are useful only for the comparison of the relative costs of two or more similar policies.

**For further information, write the Company at the mailing address listed on top of this page.**

A80045

# FAX

**To:** **Michael  Ackerman-Gary Blaustein**
Company:
Fax: 19083823133
Phone:

**From: customerservice@bannerlife.com**
Fax: 301-294-6960
Phone: 301-279-4800
E-mail: customerservice@bannerlife.com

## NOTES:

Confirmation for policy 181415457

**Date and time of transmission:** Wednesday, September 1, 2021 2:04:48 PM
**Number of pages including this cover sheet:** 03

EXHIBIT 4

PolicyConfirmation.html

Michael Ackerman
3875 E LAKE RD
SHEFFIELD LAKE OH 44054

Confirmation of Insurance

INSURED                ***There is an Active Accelerate Death Benefit
Name of Insured            Lien outstanding. As of 9/1/21 the Lien
Michael Ackerman           Total is $60,356.26.************
Policy Owner
Michael Ackerman
Primary Beneficiary
Michele Roiland,ttee Fbo Children/terms Of Tst Agr, Michele Roiland
Assignee
None

INSURANCE
| Face Amount | PolicyDate | Plan |
|---|---|---|
| $600,000.00 | 05/10/2018 | Term Life |
| Billing Frequency | Premium | Paid To Date |
| Monthly | $282.64 | 09/10/2021 |
| Waiver of Premium Rider | Other Riders | |
| No | No | |

VALUES QUOTE AS OF: 09/01/2021
| Cash Value | Cash Value of PUA | Dividends Accumulated |
|---|---|---|
| $0.00 | Not Applicable | Not Applicable |
| Loan Balance | Unused Premium | Surrender Value |
| $0.00 | $84.79 | $84.79 |
| Loan Interest Rate | | |
| Not Applicable | | |

The information contained in this policy confirmation is believed by the
company to be accurate but is not guaranteed and does not modify, amend or
supplement our policy contract.



**Legal & General**
AMERICA

Banner Life Insurance Company
3275 Bennett Creek Avenue
Frederick, Maryland 21704
(800) 638-8428

Michael Ackerman
3875 E LAKE RD
SHEFFIELD LAKE OH 44054

CONFIRMATION OF INSURANCE

We are please to provide the following information as of: 09/01/2021

| INSURED |
| --- |
| Name of Insured<br>Michael Ackerman |
| Policy Owner<br>Michael Ackerman |
| Primary Beneficiary<br>Michele Rolland,ttee Fbo Children/terms Of Tst Agr, Michele Rolland |
| Assignee<br>None |

| INSURANCE | | |
| --- | --- | --- |
| Face Amount<br>$600,000.00 | Policy Date<br>05/10/2018 | Plan<br>Term Life |
| Billing Frequency<br>Monthly | Premium<br>$282.64 | Paid To Date<br>09/10/2021 |
| Waiver of Premium Rider<br>No | Other Riders<br>No | |

| VALUES QUOTE AS OF 09/01/2021 | | |
| --- | --- | --- |
| Cash Value<br>$0.00 | Cash Value of PUA<br>Not Applicable | Dividends Accumulated<br>Not Applicable |
| Loan Balance<br>$0.00 | Unused Premium<br>$84.79 | Surrender Value<br>$84.79 |
| Loan Interest Rate<br>Not Applicable | | |

The information contained in this policy confirmation is believed by the company to be accurate but is not guaranteed and does not modify, amend or supplement our policy contract.

# This is your life insurance policy contract. Please keep it in a safe place with your other important papers.



**Legal & General**
**AMERICA**

The person covered by this policy is:

# MICHAEL ACKERMAN

**Getting in touch with Customer Care is easy.  Here's the information you'll need.**

✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LIFE INSURANCE POLICY INFORMATION**

Policy insured:  MICHAEL ACKERMAN
Policy number:  181415457
Policy plan:     10 Year Term

**HOW TO REACH CUSTOMER CARE**

Phone:        1.800.638.8428
Email:        customerservice@bannerlife.com
Online:       www.LGAmerica.com

**LIFE INSURANCE POLICY INFORMATION**

Policy insured:  MICHAEL ACKERMAN
Policy number:  181415457
Policy plan:     10 Year Term

**HOW TO REACH CUSTOMER CARE**

Phone:        1.800.638.8428
Email:        customerservice@bannerlife.com
Online:       www.LGAmerica.com

**LIFE INSURANCE POLICY INFORMATION**

Policy insured:  MICHAEL ACKERMAN
Policy number:  181415457
Policy plan:     10 Year Term

**HOW TO REACH CUSTOMER CARE**

Phone:        1.800.638.8428
Email:        customerservice@bannerlife.com
Online:       www.LGAmerica.com

**LIFE INSURANCE POLICY INFORMATION**

Policy insured:  MICHAEL ACKERMAN
Policy number:  181415457
Policy plan:     10 Year Term

**HOW TO REACH CUSTOMER CARE**

Phone:        1.800.638.8428
Email:        customerservice@bannerlife.com
Online:       www.LGAmerica.com





**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*

# ▶ RENEWABLE AND CONVERTIBLE TERM LIFE INSURANCE.

**Banner Life Insurance Company** . 3275 Bennett Creek Avenue . Frederick, Maryland 21704 . 800-638-8428

**Insured -** MICHAEL ACKERMAN

**Face Amount -** $600,000

**Policy Number -** 181415457

**Policy Date -** 05/10/2018

**Owner(s) -** MICHAEL ACKERMAN

Details for Riders, if any, can be found on the Policy Schedule.

**RIGHT TO EXAMINE POLICY FOR 30 DAYS**
**Within 30 days after the Policy is received, it may be returned to the agent through whom it was purchased or to our Home Office. We will then refund any premium paid and the Policy will be deemed void from the beginning.**

**READ YOUR POLICY CAREFULLY**
**This Policy is a legal contract between the Policy Owner and Banner Life Insurance Company.**

In this Policy, Banner Life Insurance Company will be referred to as "we," "our," or "us."

We will pay the face amount to the Beneficiary if the Insured dies while this Policy is in force. Such payment will be subject to the provisions of this Policy.

All payments are subject to the terms of this Policy. The following pages are part of this Policy.

This Policy is issued in consideration of the application and of the payment of the first premium as provided herein. A copy of the application is attached and is made a part of the Policy.

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. Any provision of the Policy that, on the provision's effective date, is in conflict with Interstate Insurance Product Regulation Commission standards for this product type is hereby amended to conform to the Interstate Insurance Product Regulation Commission standards for this product type as of the provision's effective date.

Signed for Banner Life Insurance Company at its Home Office in Frederick, Maryland on the Policy Date.

*Bryan R. Newcombe*

Secretary

*Andrew Dhore*

Senior Vice President,
Chief Financial Officer & Treasurer

## ▶ Renewable and Convertible Term Life Insurance.

**A change of premium provision is applicable subject to Guaranteed Maximum Premiums**

**The face amount is payable at death while the Policy is in force prior to Expiration Date**

**Premiums are payable as shown in the Policy Schedule to the Expiration Date or until the death of the Insured**

**This Policy is renewable to the Expiration Date**

**This Policy is convertible to the end of the Policy conversion period**

**This Policy is nonparticipating and no dividends are payable**



ICC12OPTN



## TABLE OF CONTENTS

Change of Premium.................................................................................................... 7

Conversion................................................................................................................ 8

Death Benefit Proceeds............................................................................................ 9

Definitions................................................................................................................. 4

Election of Payment Options..................................................................................... 10

General Provisions.................................................................................................... 4

Owner and Beneficiary.............................................................................................. 6

Payment of Proceeds................................................................................................ 9

Payment Options....................................................................................................... 10

Payment Option Tables............................................................................................. 12

Policy Schedule......................................................................................................... 3

Premiums................................................................................................................... 6

Renewal..................................................................................................................... 7

Termination................................................................................................................ 5

**Concluded With:**

**Riders, benefits, amendments, and endorsements, if any; and copy of applications**

**PLEASE READ YOUR POLICY CAREFULLY**

ICC12OPTN

# POLICY SCHEDULE

| | | | |
|---|---|---|---|
| **INSURED:** | MICHAEL ACKERMAN | **POLICY NUMBER:** | 181415457 |
| **ISSUE AGE AND SEX:** | 49    MALE | **ISSUE DATE:** | 04/19/2018 |
| | | **POLICY DATE:** | 05/10/2018 |
| | | **POLICY EXPIRATION DATE:** | 05/10/2064 |
| **OWNER:** | MICHAEL ACKERMAN | | |
| **RATING CLASS:** | STANDARD TOBACCO | | |

**TERM PERIODS:**     INITIAL TERM PERIOD OF 10 YEARS, FOLLOWED BY ONE YEAR PERIODS

| FORM NUMBER | TYPE OF COVERAGE | EXPIRATION DATE | FACE AMOUNT | INITIAL ANNUAL PREMIUM* | INITIAL TERM PERIOD |
|---|---|---|---|---|---|
| ICC12OPTN | RENEWABLE AND CONVERTIBLE TERM | 05/10/2064 | $600,000 | $3,226.56 | 10 years |
| ICC10 ADB | ACCELERATED DEATH BENEFIT | | | FREE | |
| | POLICY FEE | | | $60.00 | |
| | TOTAL | | $600,000 | $3,286.56 | |

**END OF POLICY CONVERSION PERIOD:** 05/09/2028

**PAYMENT MODE:**          **MONTHLY**
**PREMIUM DUE DATE:**       10th of each month

| **\*PREMIUM MODES AVAILABLE:** | ANNUAL $3,286.56 | SEMI-ANNUAL $1,676.15 | QUARTERLY $854.51 | **MONTHLY $282.64** |
|---|---|---|---|---|

For all years, and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:         semi-annual .51 quarterly .26 monthly .086

FOR MAXIMUM RENEWAL PREMIUMS FOR BASE COVERAGE , SEE PAGE 3A.

Ohio Department of Insurance's number is 800-686-1526.



BASE COVERAGE: 10 YEAR RENEWABLE AND CONVERTIBLE TERM

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|------|----------------------------------------------|
| 1 | $3,286.56 |
| 2 | $3,286.56 |
| 3 | $3,286.56 |
| 4 | $3,286.56 |
| 5 | $3,286.56 |
| 6 | $3,286.56 |
| 7 | $3,286.56 |
| 8 | $3,286.56 |
| 9 | $3,286.56 |
| 10 | $3,286.56 |
| 11 | $19,278.00 |
| 12 | $20,934.00 |
| 13 | $23,550.00 |
| 14 | $26,544.00 |
| 15 | $29,988.00 |
| 16 | $33,864.00 |
| 17 | $38,166.00 |
| 18 | $42,798.00 |
| 19 | $47,802.00 |
| 20 | $53,130.00 |
| 21 | $60,444.00 |
| 22 | $67,068.00 |
| 23 | $74,514.00 |
| 24 | $83,046.00 |
| 25 | $92,766.00 |
| 26 | $103,554.00 |
| 27 | $115,662.00 |
| 28 | $128,514.00 |
| 29 | $141,930.00 |
| 30 | $155,748.00 |
| 31 | $170,298.00 |
| 32 | $186,090.00 |
| 33 | $203,502.00 |
| 34 | $222,978.00 |
| 35 | $244,728.00 |
| 36 | $268,170.00 |
| 37 | $292,716.00 |
| 38 | $317,742.00 |
| 39 | $342,942.00 |
| 40 | $370,644.00 |

ICC12OPTN-T10

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|------|-----------------------------------------------|
| 41 | $398,796.00 |
| 42 | $427,710.00 |
| 43 | $457,842.00 |
| 44 | $490,194.00 |
| 45 | $530,556.00 |
| 46 | $576,576.00 |

*PREMIUMS MAY BE CHANGED AFTER YEAR 10 AS PROVIDED IN THE CHANGE OF PREMIUM PROVISION. BASE COVERAGE PREMIUMS INCLUDE POLICY FEE, AND ANY RATING OR FLAT EXTRA, IF APPLICABLE.

For all years, and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:      semi-annual .51 quarterly .26 monthly .086

ICC12OPTN-T10

**DEFINITIONS– All capitalized terms, not otherwise defined herein, shall have the meanings provided below.**

**Beneficiary**
The person to receive the proceeds payable at the Insured's death.

**Contingent Owner**
The Contingent Owner is as named in the application or as subsequently changed by the Owner.

**Expiration Date**
The Expiration Date is the end of the last Term Period. The Expiration Date is shown in the Policy Schedule. After the Expiration Date, no insurance will be provided under this Policy.

**Home and Administrative Office**
Our Home and Administrative Office is located at 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

**Insured**
The Insured is the individual shown in the Policy Schedule.

**Issue Age**
Issue Age is shown in the Policy Schedule and is the Insured's age as of the nearest birthday on the Policy Date.

**Issue Date**
The Issue Date is shown on the Policy Schedule. It is the date we complete the processing of the Insured's approved application, and issue to the Insured or the Owner this life insurance Policy.

**Owner**
The Owner is as named in the application, unless later changed by the Owner. If no Owner is specified, the Insured is the Owner.

**Policy**
Policy shall mean the life insurance policy specified in the Policy Schedule.

**Policy Date**
The Policy Date is shown on the Policy Schedule. This date is used to determine premium due dates, policy anniversaries, years, and months. Coverage will be effective on the Policy Date.

**Renewal Date**
A Renewal Date is the date on which the previous Term Period ended.

**Term Period**
A Term Period is the period of time that premiums are level. The Term Periods are shown in the Policy Schedule.

**Written Notice/Recording Thereof**
Written Notice means a notification or request received from the Owner in a form satisfactory to us. Written Notices are recorded at our Administrative Office. We will not be responsible for the validity of any Written Notice.

**GENERAL PROVISIONS**

**Contract**
The entire contract consists of the following:

- This Policy, including any applicable endorsements;
- Riders, if any;
- Any notice of policy changes sent to the Owner for attachment to this Policy;
- The application, including any supplemental application or amendment to the application; and
- Any application for reinstatement.



An application includes all sections and forms the Company has designated as parts of the application.

All statements made in an application are, in the absence of fraud, deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in the application attached to, or considered to have been attached to, this Policy when issued or delivered.

Only the President, a Vice President, or Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

We may not change or amend this Policy without the Owner's consent except as expressly provided in the Policy. However, we may change or amend this Policy if such change or amendment is necessary for it to comply with any state or federal law, rule, or regulation.

**Incontestability**
Statements may be used to contest the validity of this Policy or in defense of a claim only if they are contained in the application or in an endorsement or amendment, and a copy of that application, endorsement, or amendment is attached to, or considered to be attached to, the Policy at issue or is made part of the Policy when a change becomes effective.

We will not contest this Policy after it has been in force during the Insured's lifetime for two years from the Issue Date, except for failure to pay premiums or fraud in the procurement of the Policy (when permitted by applicable law in the state the Policy is delivered for issuance).

If this Policy is reinstated, except for failure to pay premiums and fraud in the procurement of the reinstated Policy (when permitted by applicable law in the state the Policy is delivered for issuance), it will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the Reinstatement. The Incontestability period will be based only on statements in the most recent applications, unless the original contestable period has not yet expired. Any Policy change requiring underwriting will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the change. Any Policy change will be contestable only for reasons pertaining to statements that were provided to us for the Policy change.

**Misstatement of Age and Sex**
If the Insured's age or sex has been misstated, we will pay the death benefit that the most recent premium paid would have purchased at the correct age and sex. If the correct age is outside of the issue age ranges, the premium and benefit will be extrapolated.

**Suicide Exclusion**
If the Insured, while sane or insane, dies by suicide within two years from the Issue Date or date of reinstatement, our liability will be limited to a refund of all premiums paid to us.

**Nonparticipating**
This Policy is nonparticipating and the Owner will not share in Banner Life Insurance Company's profits or surplus. No dividends are payable on this Policy.

**TERMINATION**

All coverage under this Policy will terminate at the earliest of:

1. The end of the Grace Period, if as described in the Grace Period provision, the minimum premium due was not received;
2. The date we receive Written Notice at our Administrative Office to terminate the Policy;
3. The date of the Insured's death;
4. The Expiration Date specified in the Policy Schedule; or
5. The date the Owner converts to a new Policy.

ICC12OPTN

## OWNER AND BENEFICIARY

The Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application or a notice of change that has been received at the Home Office in a form acceptable to the Company. The designation of Contingent Owner is as shown in the application or as subsequently elected by the Owner in a Written Notice received at the Home Office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The rights of the Owner are subject to the rights of any irrevocable Beneficiary or assignee we have on record.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living or in existence, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive or in existence at the Owner's death, all ownership rights vest in the Owner's estate or successors. In the event the Owner is other than an individual, and there are no surviving Contingent Owners or successors to the Owner, then the Insured or the Insured's estate becomes the Owner.

### Changes of Owner and Beneficiary
The Owner, Contingent Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application, unless later changed by the Owner. The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's and the Owner's lifetime. Any change of the irrevocable Beneficiary is subject to the written consent of an irrevocable Beneficiary.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be received at the Home Office in a form acceptable to the Company. Any change will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall be subject to and not affect any payment made or other action taken by the Company before Written Notice is received.

### Death of a Beneficiary
Unless otherwise provided in the Beneficiary designation:

1. The interest of any Beneficiary who dies before the Insured will pass to any surviving Beneficiaries according to their respective interests; or
2. If no Beneficiary survives the Insured, the proceeds will be paid to any surviving contingent Beneficiary according to their respective interest. If no Beneficiary or contingent Beneficiary survives the Insured, the proceeds will be paid in one sum to the Owner, if living; otherwise, to the Owner's estate.

If a trust is named as the Owner or Beneficiary of this Policy, the Company will have no obligation to verify that the trust is valid or that a trustee is acting within the scope of that trustee's authority. Any payment to the trust will release the Company from all obligations under this Policy and the Company will have no obligation to ensure that such payment is applied according to the trust agreement.

### Assignment of Policy
This Policy may be assigned. We will not be responsible for the validity of an assignment. Written Notice of an assignment must be received by our Home Office in a form acceptable to the Company. The assignment will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall not affect any payment made or other action taken by the Company before Written Notice is received. Payments to any assignee will only be made in a lump sum.

## PREMIUMS

### Payment of Premiums
The first premium must be paid during the Insured's lifetime before any insurance becomes effective. The due date of the first premium is the Policy Date. Each subsequent premium is due on the premium due date(s) shown in the Policy Schedule, and must be paid during the Insured's lifetime. The Owner may change the frequency of the premium payment to any frequency we offer on the date such change is requested. All premiums, after the first, are payable in advance at our Administrative Office. A premium receipt signed by one of our officers will be furnished upon request. In no event may premiums be paid beyond the Expiration Date.



**Grace Period**
Except for the first premium, we will allow a 31 day grace period after the premium due date to pay each premium. During the Grace Period, the Policy will remain in force. We will send notification of the Grace Period and the minimum premium due to the Owner's last known address and to any assignee of record at least 30 days prior to the date the Policy is to terminate.

If sufficient premium is not paid, all coverage under this Policy will terminate without value at the end of the Grace Period. Sufficient premium payment sent by U.S. mail must be postmarked within the Grace Period. If death of the Insured occurs during the Grace Period, we will subtract the premium amount required to provide insurance coverage to the end of the Policy month in which the date of death of the Insured occurred from the Death Benefit Proceeds.

**Reinstatement**
A Policy which terminates in accordance with the Grace Period provision may be reinstated if:

1. Written request for Reinstatement is made within five years after the expiration of the Grace Period and before the Expiration Date of the Policy. The reinstated Policy will be in force from the latter of the date we approve the application for Reinstatement and the date required premiums are paid;
2. The Owner submits a written application;
3. Evidence of the Insured's insurability is received and approved by us; and
4. All due and unpaid premiums, including back payments, with interest payable at an annual rate of [6%] are paid.

**CHANGE OF PREMIUM**

We may, at our sole discretion, change the premium for this Policy after the initial Term Period, exclusive of any riders, subject to the following:

1. The annual renewal premium for this Policy will not exceed the maximum annual renewal premium shown in the Policy Schedule;
2. The premium may not be changed more than once during any 12 month period;
3. We will send the Owner, at the address in our records, a Written Notice of any change in premium at least 30 days before the date on which the change will be effective;
4. Any change of premium will be based on our expectations as to future experience for such elements as persistency, expenses, mortality, taxes, and investment earnings;
5. The modal premium will be calculated on the same basis as used on the Issue Date of this Policy;
6. Any change in premium will be on a uniform basis applying to all policies with the same issue age, sex, rating classification, duration, and plan of insurance as this Policy. A change of health will not cause a change of premium; and
7. Any change in premium will take effect on the Policy anniversary date following the date we make the change.

**RENEWAL**

**Renewability**
This Policy may be renewable for additional Term Periods. Evidence of the Insured's insurability need not be furnished. Renewal will occur only if premiums have been paid to the Renewal Date. This Policy, however, will not continue beyond the Expiration Date.

**Effective Date of Renewal**
The renewal premium must be paid within 31 days of the Renewal Date in order for the renewal to become effective. If the Insured dies during this period, the Policy will be renewed automatically and the portion of the renewal premium required to provide insurance from the premium due date to the end of the Policy month in which the Insured's death occurs will be deducted in the calculation of proceeds payable.

**Renewal Premiums**
The maximum annual renewal premium rates for this Policy, including riders and benefits, are shown in the Policy Schedule.

ICC12OPTN

**Automatic Renewal**

This Policy will be automatically renewed on the Renewal Date if:

1. This Policy contains a total disability benefit; and
2. Premiums are being waived to the Renewal Date under such disability benefit.

We will waive renewal premiums as long as the Insured continues to be totally disabled under such total disability benefit.

## CONVERSION

This Policy may be converted to a new policy on the Insured's life. Evidence of the Insured's insurability is not required. Any conversion will be subject to the following:

1. Occurring on any premium due date, but not later than the end of the Policy conversion period shown in the Policy Schedule;
2. Receipt of the Owner's written request and application for conversion;
3. Payment of the first premium for the new policy;
4. The Owner returning this Policy to us; and
5. Except for as provided in the Automatic Conversion provision, no conversion shall occur while the Insured is totally disabled under the terms of a total disability benefit.

The new policy will be issued:

1. With the date of conversion as its Policy Date;
2. At the Insured's age on the date of conversion;
3. With the same rating classification as that under this Policy;
4. On any permanent life plan which we, at our sole discretion, make available for conversion and, for the amount converted, we customarily issue on the date of conversion to applicants with the Insured's rating classification;
5. With premiums based on our rates for the rating classification and plan of insurance on the date of conversion;
6. For an amount of insurance not less than our minimum for the plan provided nor greater than the face amount of this Policy on the conversion date. At least one plan of insurance will be available for conversion in an amount equal to the face amount of this Policy on the conversion date;
7. So that the time limit specified in the Incontestability and Suicide provisions of the new policy will be measured from the Issue Date of this Policy; and
8. Subject to any assignment of this Policy received at our office.

The new policy will contain a total disability benefit if:

1. This Policy contains such benefit in force on the date of conversion;
2. On the date of conversion, we customarily issue such benefit to applicants with the Insured's age, sex, and rating classification; and
3. On the date of conversion, we customarily issue such benefit in conjunction with the plan to which the Insured converts.

If more than one type of total disability benefit is available on the date of conversion, the benefit attached to the new policy will be the benefit with the lowest premium.

**Automatic Conversion**

This Policy will be converted to a permanent life plan selected by us at the end of the Policy conversion period if:

1. This Policy contains a total disability benefit;
2. The Insured is totally disabled under the terms of the disability benefit at the end of the Policy conversion period; and
3. Such disability continued during the six months prior to the end of the Policy conversion period.



The new policy's premiums will be based on the Insured's age on the date this Policy is converted. The new policy will be issued for an amount equal to the face amount on this Policy on the conversion date. Any premium falling due while the Insured continues to be totally disabled will be waived.

## DEATH BENEFIT PROCEEDS

The life insurance proceeds payable at the Insured's death will be (1) plus (2) plus (3) minus (4) where:

    (1) Is the face amount of this Policy, shown in the Policy Schedule;
    (2) Is any insurance on the Insured's life provided by riders;
    (3) Is the portion of any premium paid for a period beyond the Policy month in which the Insured's death occurs; and
    (4) Is any premium which is due and unpaid for a period from the premium due date to the end of the Policy month in which the Insured's death occurs.

The payment of interest on the death benefit shall be as follows:

1. Interest shall accrue and be payable from the date of death.
2. Interest will accrue at the rate or rates applicable to the Policy for funds left on deposit. In determining these effective annual rate or rates, the Company shall use the rate in effect on the date due proof is received by the Company.
3. Interest will accrue at the effective annual rate determined in Item 2 above, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Items (a), (b), and (c) to the date the claim is paid, where it is:
    a. The date that due proof of death is received by the Company;
    b. The date the Company receives sufficient information to determine its liability, and the appropriate payee legally entitled to the proceeds; and
    c. The date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to: (i) the establishment of guardianships and conservatorships; (ii) the appointment and qualification of trustees, executors, and administrators; and (iii) the submission of information required to satisfy any state and federal reporting requirements.

We will not pay the death proceeds until we receive all of the following at our Administrative Office:

1. This Policy or a completed and notarized lost policy affidavit;
2. Due proof of death, satisfactory to the Company, that the Insured died while the Policy was in effect;
3. A written claim for the death proceeds completed on a form that we supply; and
4. If this Policy or a policy change or reinstatement is contestable as set forth in the Incontestability provision when the Insured died, an authorization, on a form that we supply, from a person authorized to allow us to obtain and disclose information about the Insured.

We reserve the right to require the return of the Policy at time of settlement.

## PAYMENT OF PROCEEDS

Any amount payable under this contract will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any Payment Option. However, options will not be available if:

1. The net proceeds are less than $2,500;
2. The amount of each payment is less than $50; or
3. In the case of Payment Option 1, 3, or 4, the payee is not a natural person receiving payment in his or her own right.

Proceeds left with us may be withdrawn by Written Notice where such right is given. We reserve the right to postpone payment of any withdrawal for as long as six months from the date we receive Written Notice.

We may require evidence of the survival of any payee before any settlement payment payable to the payee is made.

ICC12OPTN

## ELECTION OF PAYMENT OPTIONS

### By Owner
During the Insured's lifetime, the Owner may elect any Payment Option and may change such election if he or she has reserved the right to do so.

If the Owner elects a Payment Option for the Beneficiary, the Beneficiary may not:

1. Change or cancel the election;
2. Assign or transfer the amount held by us; or
3. Withdraw any future installments or unpaid interest installments unless these rights are granted in the election.

### By Beneficiary
If the Owner does not elect a payment option, the Beneficiary may do so after the Insured's death.

Such election by the Beneficiary:

1. Must be made before the payment of any Policy proceeds has been made; and
2. Shall be effective as of the date of the Insured's death.

### Conditions of Election
Any election or change must be made by Written Notice to us. No election or change will be effective until we record it.

## PAYMENT OPTIONS

The annuity benefits at the time of their commencement will not be less than those that would be provided by the application of the cash surrender value to purchase a single consideration immediate annuity contract at purchase rates offered by the Company at the time to the same class of annuitants whether the annuity benefits are payable in fixed or variable amounts, or both.

The following sections describe the payments options available under this Policy.

### Option 1 – At Interest
The proceeds may be left with us to draw interest. Interest may be paid annually, semi-annually, quarterly, or monthly. The first payment will be made at the end of the interest frequency period chosen. The guaranteed interest rate is 1.5%, compounded yearly. Interest shall not be paid beyond the lifetime of one payee except with our consent.

### Option 2 – Payments of a Fixed Amount
Under this option, the Company will make monthly payments in the amount chosen until the proceeds and earned interest have been paid in full. The total amount paid each year must be at least 5% of the original proceeds. The length of the payment period will depend on the amount chosen the amount of the proceeds applied, and the amount of interest earned.

### Option 3 – Payments for a Fixed Period
We will make payments for a fixed period. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table A. At the payee's death, we will continue to pay the balance of the unpaid payments to the payee's Beneficiary.

### Option 4 – Life Income
We will make equal monthly payments during the payee's lifetime, with a minimum period guaranteed (60 or 120 months). Payments will end with the last monthly payment before payee's death. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table B.



**Evidence of Survival**

We have the right to require satisfactory proof of any payee's age. The right to change options is not available after payments commence under this option.

**Basis of Values**

The Payment Option tables are based on an interest rate of 1.5% compounded yearly. For options involving lifetime income, mortality rates are based on the 2000A Mortality Table. We may offer more favorable rates than those determined on this basis.

**Additional Options**

Any proceeds payable under this Policy may be paid under any other method of payment agreed to by us at the time of settlement.

ICC12OPTN

# PAYMENT OPTION TABLES

## Table A – Monthly Payments for Each $1,000 of Proceeds

| Number of Years | Monthly Payments |
|---|---|
| 5 | 17.28 |
| 6 | 14.51 |
| 7 | 12.53 |
| 8 | 11.04 |
| 9 | 9.89 |
| 10 | 8.96 |
| 11 | 8.21 |
| 12 | 7.58 |
| 13 | 7.05 |
| 14 | 6.59 |
| 15 | 6.20 |
| 16 | 5.85 |
| 17 | 5.55 |
| 18 | 5.27 |
| 19 | 5.03 |
| 20 | 4.81 |
| 21 | 4.62 |
| 22 | 4.44 |
| 23 | 4.28 |
| 24 | 4.13 |
| 25 | 3.99 |
| 26 | 3.86 |
| 27 | 3.75 |
| 28 | 3.64 |
| 29 | 3.54 |
| 30 | 3.44 |

ICC12OPTN

**Table B, Monthly Payments for Each $1,000 of Proceeds**

| Age | LIFE ONLY | | LIFE WITH PERIOD CERTAIN | | | |
| | | | 5 Years | | 10 Years | |
| | Male | Female | Male | Female | Male | Female |
|---|---|---|---|---|---|---|
| 50 | 3.24 | 3.00 | 3.24 | 3.00 | 3.22 | 2.99 |
| 51 | 3.32 | 3.06 | 3.31 | 3.06 | 3.29 | 3.05 |
| 52 | 3.39 | 3.13 | 3.38 | 3.12 | 3.36 | 3.11 |
| 53 | 3.47 | 3.19 | 3.46 | 3.19 | 3.44 | 3.18 |
| 54 | 3.55 | 3.26 | 3.54 | 3.26 | 3.51 | 3.25 |
| 55 | 3.63 | 3.34 | 3.63 | 3.33 | 3.60 | 3.32 |
| 56 | 3.73 | 3.42 | 3.72 | 3.41 | 3.68 | 3.39 |
| 57 | 3.82 | 3.50 | 3.81 | 3.49 | 3.77 | 3.47 |
| 58 | 3.92 | 3.59 | 3.91 | 3.58 | 3.87 | 3.56 |
| 59 | 4.03 | 3.68 | 4.02 | 3.67 | 3.97 | 3.64 |
| 60 | 4.15 | 3.78 | 4.13 | 3.77 | 4.07 | 3.74 |
| 61 | 4.27 | 3.88 | 4.25 | 3.87 | 4.19 | 3.83 |
| 62 | 4.40 | 3.99 | 4.38 | 3.98 | 4.30 | 3.94 |
| 63 | 4.54 | 4.11 | 4.52 | 4.09 | 4.43 | 4.05 |
| 64 | 4.69 | 4.23 | 4.66 | 4.22 | 4.55 | 4.16 |
| 65 | 4.85 | 4.37 | 4.81 | 4.35 | 4.69 | 4.28 |
| 66 | 5.02 | 4.51 | 4.98 | 4.49 | 4.83 | 4.41 |
| 67 | 5.20 | 4.66 | 5.15 | 4.64 | 4.98 | 4.55 |
| 68 | 5.39 | 4.83 | 5.33 | 4.80 | 5.13 | 4.69 |
| 69 | 5.60 | 5.00 | 5.53 | 4.97 | 5.29 | 4.84 |
| 70 | 5.82 | 5.19 | 5.73 | 5.15 | 5.45 | 5.00 |
| 71 | 6.05 | 5.40 | 5.95 | 5.34 | 5.62 | 5.17 |
| 72 | 6.30 | 5.62 | 6.18 | 5.55 | 5.79 | 5.34 |
| 73 | 6.57 | 5.85 | 6.42 | 5.78 | 5.96 | 5.52 |
| 74 | 6.85 | 6.11 | 6.67 | 6.02 | 6.14 | 5.71 |
| 75 | 7.15 | 6.39 | 6.94 | 6.28 | 6.32 | 5.91 |
| 76 | 7.48 | 6.69 | 7.22 | 6.55 | 6.51 | 6.11 |
| 77 | 7.82 | 7.01 | 7.52 | 6.84 | 6.69 | 6.31 |
| 78 | 8.19 | 7.37 | 7.83 | 7.16 | 6.87 | 6.52 |
| 79 | 8.59 | 7.75 | 8.15 | 7.49 | 7.05 | 6.73 |
| 80 | 9.02 | 8.16 | 8.49 | 7.84 | 7.22 | 6.93 |
| 81 | 9.47 | 8.61 | 8.85 | 8.21 | 7.39 | 7.14 |
| 82 | 9.95 | 9.09 | 9.21 | 8.60 | 7.56 | 7.33 |
| 83 | 10.47 | 9.62 | 9.59 | 9.01 | 7.71 | 7.52 |
| 84 | 11.02 | 10.18 | 9.97 | 9.44 | 7.86 | 7.69 |
| 85 | 11.61 | 10.80 | 10.37 | 9.87 | 8.00 | 7.86 |
| 86 | 12.24 | 11.46 | 10.76 | 10.32 | 8.13 | 8.01 |
| 87 | 12.91 | 12.16 | 11.17 | 10.77 | 8.24 | 8.15 |
| 88 | 13.62 | 12.92 | 11.57 | 11.22 | 8.35 | 8.27 |
| 89 | 14.37 | 13.72 | 11.97 | 11.66 | 8.45 | 8.38 |
| 90 | 15.17 | 14.56 | 12.37 | 12.10 | 8.54 | 8.48 |
| 91 | 16.02 | 15.43 | 12.77 | 12.52 | 8.61 | 8.56 |
| 92 | 16.92 | 16.35 | 13.16 | 12.92 | 8.68 | 8.64 |
| 93 | 17.87 | 17.30 | 13.54 | 13.31 | 8.74 | 8.71 |
| 94 | 18.88 | 18.30 | 13.91 | 13.69 | 8.80 | 8.76 |
| 95 | 19.97 | 19.33 | 14.28 | 14.05 | 8.84 | 8.81 |

Income Payments for ages not shown furnished upon request. The values above are based on 1.5% and the 2000A Mortality Table. Age above is based on age nearest birthday.

ICC12OPTN



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428

# SUPPLEMENT TO THE APPLICATION

Proposed Insured: MICHAEL ACKERMAN                    Policy Number: 181415457

## STATEMENT OF GOOD HEALTH AND CONTINUED INSURABILITY

**Declaration of Understanding and Agreement**

I/we understand that insurance under the terms of the Policy cannot become effective until all requirements for the delivery of the Policy are fulfilled, including the completion of this Supplement Regarding Good Health and Continued Insurability Application.

**Representations**

Since the date of the Application Part 1 or Part 2, and except as stated below, has any proposed insured:

1.  Consulted, been examined or been treated by a member of the medical profession; or made any appointment for a visit to a medical facility or member of the medical profession?    ☐Yes   ☐No

2.  Had any answers or statements contained in Part 1 or Part 2 of the Application or supplements thereto changed since the date of the Application? or    ☐Yes   ☐No

3.  Had any life or accident, health or medical service benefit postponed, declined, rated up, ridered, modified, canceled, or been refused issue, renewal or reinstatement of such insurance or benefits?    ☐Yes   ☐No

**If the answer to any of the above questions is "Yes", please provide details below:**

Additional Information          Date          Name/Address of Care Provider or Treatment Facility

_____

_____

_____

_____

**Representation and Agreement:**

I/we represent that, to the best of my/our knowledge and belief, these statements are complete and true and agree that this Statement and the answers given herewith will be made part of the Policy.

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

I/we understand and agree that if any of the above representations are answered "Yes", no Policy will be in force and coverage cannot begin unless and until the Company approves this Statement.

_____                    _____
Signature of Proposed Insured(s)                                        Date (MM/DD/YYYY)

_____     _____     _____
Signature of Owner (if other than Proposed Insured)    Include title if signing for business       Date (MM/DD/YYYY)
                                                        or trust

ICC14-LU1013                    

## BANNER LIFE INSURANCE COMPANY

### Frederick, Maryland

### AMENDMENT TO APPLICATION

PROPOSED INSURED - MICHAEL ACKERMAN

FILE NUMBER -    181415457             DATE OF APPLICATION -    01/24/2018

THE BANNER LIFE INSURANCE COMPANY IS HEREBY AUTHORIZED TO
AMEND THE APPLICATION IDENTIFIED ABOVE IN THE FOLLOWING MANNER:

Part 2 Question #5 shall read: Same as question #4.
Part 2 Question #18 shall read: Yes. Mild asthma. I've also had benign
granulomatous lung nodules present since I was a child.
Part 2 Question #26a shall include: Celaxa and Ativan.
Part 2 Question #23d shall read: Yes. I have a history of toxic exposure as
a first responder. I have been advised to have a chest Xray & pelvic and
abdominal CT scans every 10 years, however I have no adverse symptoms and
haven't yet had these tests done.
Part 1 Question #16 shall read: Michele Roiland DOB 03/30/1971, Ex-Wife,
50%, Meagan L Ackerman DOB 12/20/1997 Daughter, 18%, Marissa M Ackerman,
DOB 03/06/2000, Daughter. 16%, Michael R Ackerman, DOB 10/30/2003, Son, 16%.

IT IS AGREED THAT THIS AMENDMENT SHALL FORM A PART OF MY APPLICATION AND
THAT A COPY HEREOF IS TO BE ATTACHED TO THE POLICY.

_____        _____
Proposed Insured's Signature                     Date

_____        _____
Signature of Policy Owner                 Title, if owner is Business or Trust

LU-14(54-62)

BANNER LIFE INSURANCE COMPANY





**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428
www.LGAmerica.com

This rider provides for an accelerated death benefit payment to the Owner of the policy during the lifetime of the Insured subject to eligibility requirements. An accelerated death benefit payment, hereafter referred to as an ADB, will reduce the policy's death benefit proceeds otherwise payable and limit the availability of any policy cash surrender value and/or any available loan value. This rider is not intended or designed to provide health, nursing home, or long-term care. There are no restrictions on the use of an ADB.

The policy owner should seek assistance from a tax advisor regarding the tax status of any ADB payment.

In this Benefit Rider, Banner Life Insurance Company will be referred to as "we"," our" or "us" or "company". The "policy" is the policy to which this rider is attached. Coverage pursuant to this rider begins on the same date as the coverage for the policy. This rider is subject to all terms and conditions of the policy, except as provided in this rider. The rider is made part of the policy on the policy issue date. For purposes of this rider, the insured is as defined in the policy.

**BENEFIT**
We will make an accelerated death payment subject to the provisions of this rider. An ADB payment will require:
1. The Owner's written request, sent to our home office, for an ADB payment.
2. Proof that is acceptable to us that the Owner is eligible for receipt of an ADB payment.
3. A signed acknowledgement of concurrence for payment from all irrevocable beneficiaries and any assignee on the policy. If the company paying the ADB is itself the assignee under the policy, no signed acknowledgement is required.
4. A full release of any collateral assignment of the policy with the exception of collateral assignment to the company.
5. That, if the policy is a term insurance, it cannot have less than twelve months remaining until the maturity date on the date that payment is to be made.
6. That the policy has not been voided and is not being contested.

The ADB will be paid to the Owner or Owner's estate while the insured is living, unless the benefit has been otherwise assigned or designated by the Owner. The payment of the accelerated death benefit is due immediately upon receipt of the due written proof sufficient by the company to confirm eligibility for the ADB.

We will not make an ADB if the policy is being continued as extended term insurance or reduced paid-up insurance on the date payment is to be made.

**BENEFIT LIMITS**
The maximum accelerated death benefit is the lesser of:
1. 75% of the policy's primary death benefit as determined on the date that the company approves payment of the ADB; and
2. $500,000.
This amount is further reduced by any outstanding policy loan, with accrued interest, on the date of payment of the ADB.

**ADB ELIGIBILITY REQUIREMENTS**
To be eligible for an ADB payment the Owner must provide to us:
1. evidence acceptable to us that the Insured is living and has a medical condition that is reasonably expected to result in a life expectancy of twelve months or less; this evidence must include, but is not limited to, certification by a physician that we approve who is licensed to practice medicine in the United States or Canada and is acting within the scope of that license.

2. evidence that election of this benefit is voluntary and without coercion on the part of any third party, including any creditor or government agency.
3. evidence that only one of the Insureds is living, if the policy is a last survivor policy.

Additionally, the company has the right to require a second or third medical opinion to confirm benefit eligibility. Such second and third opinions are at the company's expense. The second medical opinion may include a physical examination by a physician designated by the company. In the case of conflicting opinions, eligibility for benefits shall be determined by a third medical opinion that is provided by a physician that is mutually acceptable to the Owner and the Company.

**EFFECT OF THE ACCELERATED DEATH BENEFIT**
The ADB will be treated as a lien against the policy's death benefit. Such lien will limit the availability of any surrender benefit and any future policy loans, policy withdrawals or policy surrenders.

Prior to, and concurrent with, the election to receive an ADB, the owner and irrevocable beneficiary will be given a statement demonstrating the effect of an ADB on the policy's cash surrender values, death benefit, and policy loans.

The lien amount will at any time equal:
1. the amount of the ADB payment to the owner; plus
2. the administrative fee; plus
3. the amount of any premium required to remove the policy from the grace period; plus
4. any unpaid required premiums added to the lien as described below; plus
5. accrued lien interest charges as described below.

For the amount of the lien equal to the policy's cash surrender value at the time the lien is in effect, interest will be charged at the policy loan interest rate stated in the policy. For the amount of the lien in excess of such cash surrender value, interest will be charged at a rate that is no greater than the greater of:
1. the current yield on a 90-day treasury bill on the date of the ADB payment; and
2. the current maximum adjustable policy loan interest rate allowed by law on the date of payment subject to the Interstate Insurance Product Regulation Commission standards.

After the company makes an ADB payment, the Owner will be liable for premium payments required to keep the policy, and applicable riders, in force through the date of death of the Insured. Any such premium payments, if not paid to the company, will be added to the lien. Cost of insurance charges, if applicable, will continue to be charged against the policy (unless being waived because of a waiver of monthly deduction benefit that is in effect). Waiver of premium benefits, if in effect following payment of an ADB, will continue to apply.

Subsequent to payment of an ADB, upon the death of the insured the proceeds payable will equal the death benefit proceeds, as defined in the policy, less the total lien in effect at the date death.

If the policy has an accidental death benefit provision, that provision shall not be affected by the payment of the accelerated death benefit.

**ADDITIONAL PROVISIONS**

There is no premium or cost of insurance charge for this rider. However, an administrative fee that will not exceed $250 will apply at the time the ADB is paid and it will be added to the lien.

The policy's primary death benefit is the death benefit provided by the policy. It does not include any accidental death benefits, the death benefit provided by any riders, or death benefits payable due to the death of anyone other than the Insured. If the policy does not provide for policy loans, the loan value is defined as zero. If the policy does not provide cash surrender values, the cash surrender value is defined as zero.

## INCONTESTABILITY
The policy's incontestability provision will apply to this rider.

## PAYMENT OPTIONS
The ADB will be payable to the Owner as a lump sum payment.

If the policy has a cash surrender value, the available ADB will be at least 75% of any such cash surrender value, where such cash surrender value reflects the deduction of any outstanding policy indebtedness.

If the insured dies after the owner elects to receive an ADB, but before the Owner receives such benefits, the election is cancelled and the death benefit is paid pursuant to the policy.

## REINSTATEMENT
The policy's reinstatement provision will apply to this rider.

## TERMINATION
This rider will terminate on the earliest of:
1. the date of maturity or termination of the policy;
2. when a nonforfeiture option has become effective under the policy; or
3. at the date the Owner's written request for termination is signed; this request must be received in our home office.

If at any time the total lien amount equals or exceeds the policy's death benefit proceeds as defined in the policy, the policy will terminate. Termination will occur 31 days after the company has mailed a notice of termination to the last known address of the Owner, unless all or part of the lien amount is repaid with 31 days after the noticed is mailed. We will accept a partial repayment only if the death benefit proceeds of the policy would exceed the lien amount after the partial repayment is applied.

Termination shall not prejudice the payment of benefits if the insured became eligible for an ADB while the policy was in force.

This rider is subject to the conditions of this policy. Where a conflict between the rider and the policy exists, the conditions of the rider will control.

The issue date of this benefit is the policy date, or a later date if shown here.

Signed for us at our home office in Frederick, Maryland.


Secretary

Senior Vice President,
Chief Financial Officer & Treasurer

**Timothy J. Dey, Esq.**
**222 Route 18 North**
**East Brunswick, N.J. 08816**
legal@deylawoffice.com

(732) 828-6600
(732) 828-6604 Fax

February 22, 2021

***Transmission via facsimile & email (301) 294-6960***
customerservice@bannerlife.com
Banner Life Insurance
Legal & General America
3275 Bennett Creek Avenue
Fredrick, Maryland 21704

**RE:    Life Insurance Policy No.: 181415457**
       **Michael Ackerman Insured**

Dear Sir or Madam,

Please be advised that with regard to the above referenced policy this office represents the named beneficiaries. The insured has been threatening to "cancel" this policy although he is well aware that by law he cannot. The insured procured this policy pursuant to a court order in connection with his Final Judgment of Divorce entered on June 13th 2016 (**FM-18-704-15**) spelled out in the party's property settlement agreement incorporated therein. This order has been furnished previously and can be resent upon request.

The irrevocable beneficiaries of this policy are Plaintiff ex-wife Michele L. Roiland (F/K/A Ackerman) and the parties' children. By order this policy cannot be changed, terminated, or assigned. Further, Plaintiff ex-wife has the right to pay the premium in the event the insured becomes unable. The policy remains paid in full.

Sincerely,

*Timothy J. Dey*

Timothy J. Dey, Esq.
TJD/jlmJD
***CC: MLR***

EXHIBIT 5

Mark Graziani, JD, MBA, Esq.
Attorney at Law
Graziani Law, LLC
P.O. Box 1158
Norton, OH 44203

mark_graziani@yahoo.com
(330) 571-3350

March 29, 2021

Banner Life Insurance
Legal & General America
3275 Bennett Creek Avenue
Fredrick, MD 21704

RE:    Life Insurance Policy No.: 181415457, Michael Ackerman Insured

Dear Sir or Madam:

On February 22, 2021, Attorney Timothy Dey of East Brunswick, New Jersey sent your company a letter rebuffing Michael Ackerman's desire to make modifications to his Banner Life Insurance policy. Attorney Dey represents the interests of Michele Roiland, Michael Ackerman's ex-wife and beneficiary of this particular policy. In this letter, Attorney Dey stated, "The insured has been threatening to 'cancel' this policy although he is well aware that by law he cannot." For the reasons to follow, this statement is simply not true.

Attorney Dey makes reference to the September 30th, 2016, Final Judgment for Divorce (FM-18-704-15) which contains the following language:

> Husband will maintain life insurance coverage in an amount no less than $300,000, naming Wife as beneficiary, to secure the balance of any unpaid spousal support obligation. Husband has the option of reducing the amount of coverage by no more than $15,000.00 annually. [Judgment, page 5].

Please note the language contained in the final judgment references no specific details about the requirement to maintain any particular life insurance coverage; as long as Michael Ackerman maintains coverage in the amount stated (less any annual reductions), he is not in violation of the terms of this order. Any life insurance policy in the stated amount with any company would satisfy this requirement. Attorney Dey attempts to assign the title of "irrevocable beneficiary" to Ms. Roiland via his letter when

1

EXHIBIT 6

it is not warranted; unless it is stated so in the policy, Ms. Roiland is not an irrevocable beneficiary. If she is not an irrevocable beneficiary, then Mr. Ackerman can change his policy as he sees fit.

I would like to briefly point out that Banner Life's office is not the appropriate forum to address this matter, assuming some issue exists in the first place. If Ms. Roiland believes that Mr. Ackerman is somehow in violation of the terms of their divorce, then the proper arena to address Ms. Roiland's concerns is the Somerset County Superior Court of New Jersey, not this office. It is not up to Banner Life to adjudicate whether this particular policy, or Mr. Ackerman's other policies, meet the terms of their divorce judgment. Simply put, to "short-cut" the adjudication process by sending Banner Life such a letter is not the appropriate method.

It is well-settled that a revocable beneficiary does not have a guaranteed property interest in a life insurance distribution. A beneficiary does not have standing to attempt to influence the insurance company's response to an insured's request to change the policy; in the very least it is improper, and at most it amounts to tortious interference with a contract. Mr. Ackerman has a contractual relationship with Banner Life which outlines the rights and responsibilities of both parties, including the right to modify his policy pursuant to the terms of the contract.

Thus, despite Attorney Dey's letter, Mr. Ackerman has the latitude to freely change his policy at his discretion. He is not forbidden to do so "by law" and, so long as he maintains other sufficient coverage for Ms. Roiland and the children, he is not in violation of the terms of his divorce. I trust this letter clarifies the positions of all parties – unless Ms. Roiland is labeled as an irrevocable beneficiary in Banner Life policy 181415457, then Mr. Ackerman can make any changes to this policy he so desires. I hope this letter puts this matter to rest. If you have any questions, please contact me at the addresses above.

Sincerely,

_____
Mark Graziani, Attorney at Law

Cc:    Timothy J. Dey, Esq., 222 Route 18 North, East Brunswick, NJ 08816
       William Perry, 7111 Valley Green Road, Ft. Washington, PA 19034