# EXHIBIT F

Civil Action NO. 1: 21-cv-2084

Timothy J. Dey, Esq. **ID#026981999**
222 Route 18 North
East Brunswick, N.J. 08816
(732) 828-6600
(732) 828-6604 fax
Attorney for Plaintiff

| | |
|---|---|
| MICHELE L. ACKERMAN, | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION – FAMILY PART |
| Plaintiff, | SOMERSET COUNTY |
| | |
| v. | **DOCKET NO.: FM-18-000704-15** |
| | CIVIL ACTION |
| | |
| MICHAEL W. ACKERMAN, | **CERTIFICATION OF PLAINTIFF** |
| | |
| Defendant. | |

I, Michele L. Ackerman, Plaintiff in the above captioned matter residing at 54 Pilot Lane, Staten Island, N.Y. 10309 and fully familiar with all facts relevant do by way of Certification hereby say:

1. The Defendant is clearly appears to be committing fraud on this Court by submitting false insurance documents in an effort to cash out the coverage our Property Settlement Agreement mandates for myself and our children.

2. Defendant's own exhibits do not even match up as the policy numbers change from page to page.

3. I need to ensure that the coverage mandated by our Property Settlement Agreement is not cancelled or diminished beneath that the Agreement mandates.

4. I believe Defendant has removed $60,000.00 as an advanced death benefit.

## **BACKGROUND**

1. 2026, almost five (5) years from now.

2. Our Property Settlement Agreement does mandate that Defendant maintain life insurance coverage of $600,000.00: $300,000.00 is for child support and continues until our youngest is emancipated (which looks to be May of 2026). It also provides for

$300,000.00 to cover alimony.

3. Defendant now comes before the Court with a doctor's note stating he is terminally ill (with no length of life prognosis).

4. Defendant's goal on his OTSC is to have the right to cancel a life insurance policy that he claims is additional to his mandatory coverage of $600,000.00.

**2020-2021**

5. This Court must be aware that Defendant has been anything but honest throughout the years since we divorced.

6. This Court also needs to know that Defendant is scheduled for sentencing on January 6th 2022 for wire fraud and money laundering. *See attached Exhibit A.*

7. As the Court can see his theft / fraud extends to over $36 million. *See attached Exhibit A.*

8. One thing that Defendant alludes to is his continuing effort to get me to permit a buyout of his life insurance proceeds thereby leaving my children and myself with no / less protection that under our current policies.

9. One thing is certain: if Defendant is terminal as he says he is any break in insurance coverage will be irreversible.

10. I am not sure why he alleges that he has two life insurance policies as he was never required to have more than one.

11. If the Court looks at his exhibits the insurance policies have different policy numbers: on page one of the AAA Life Insurance Policy the policy number is: 4046238327 (*Defendant's exhibit "3"*).

12. Yet on page four of the same policy the policy number is: 4046238329.

13. On Page One the policy states: "none" next to Riders; yet on page four it states "Travel Accident Endorsement.

14. I called AAA Life and the representative told me that the "maximum amount the write guaranteed policies is for $25,000.00. No one writes policies for guaranteed whole life on the amount of $600,000.00.

15. After consulting with a family member in insurance he noted that $389.00 is a very low premium for a $600,000.00 whole life policy; especially for someone who is terminal.

16. Add to that that fact that "beneficiary" is misspelled and the apparent date he printed this out is March 29th 2021 and all signs point to Defendant attempting to scam this Court.

17. Defendant's policy also has an effective date of "first policy year" 2019; $389.00 per month for a terminal insured.

18. What Defendant has done is secured an accidental death policy and intermingled the pages to make it appear that he has two whole life policies. *See attached Exhibit B.*

19. The fourth page states "variable whole life" while the first page says "guaranteed issued whole life policy". *See attached Exhibit B.* **In other words these are two different types of policy.**

20. Once again, the Court must know that this Defendant has done things like this before; it is why he has been prosecuted and why he is being sentenced (on January 6th 2022) for wire fraud and money laundering.

21. The Defendant has taken out $60,000.00 on the Banner policy. *See attached Exhibit C.*

22. Defendant needs to change the language in the Banner Policy making the children and I irrevocable beneficiaries.

23. The Court needs also to know that I had to pay three quarterly payments from the fall of 2020 to summer of 2021 $2,562.00.

I am aware that if any of the foregoing statements made by me are knowingly false that I may be subject to punishment.

Date: 9/16 2021

*Michele S. Ackerman*
Michele, Ackerman

Exhibit "A"

Exhibit "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :

UNITED STATES OF AMERICA

            :     CONSENT PRELIMINARY ORDER
     - v. -            OF FORFEITURE AS TO SPECIFIC
            :     PROPERTY/
MICHAEL ACKERMAN,       MONEY JUDGMENT

            :
        Defendant.     20 Cr. 93 (LTS)

            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, on or about February 3, 2020, MICHAEL ACKERMAN (the "Defendant"), was charged in a two-count Indictment, 20 Cr. 93 (LTS) (the "Indictment"), with wire fraud, in violation of Title 18, United States Code, Section 1343 and 2 (Count One); and money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Two);

WHEREAS, the Indictment included a forfeiture allegation as to Count One of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code 2461(c), of any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense charged in Count One of the Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offense charged in Count One of the Indictment, and the following property:

    i.    29 Kimrey Ln, Highway 12 East, Harlowton, Montana, 59085, Legal Description S24, T08 N, R13 E, Tract 3 of COS #104358 containing 154.91 acres (the "Montana Property");

    ii.   1116 Miramar Drive, Delray Beach, Florida, 33483, Legal Description, The Williamson-Deibel Sub W 15 FT OF LT 5, LTS 6, 7 & E 32.5 FT OF LT 8 (the "Florida Property");

   iii.  3300 Wooster Road, Rocky River, Ohio, 44116, Legal Description SEC 14 SEC 17 30429047 (the "Rocky River Property");

iv.   3875 E Lake Road, Sheffield, Ohio, 44054, Parcel Number 0300043101009 (the "Sheffield Property"); and

v.   2281 St. Marks Road, Valley City, Ohio, 44280, Legal Description: TR 1, LOT 21, W MID PT 5.500A (the "Valley City Property");

WHEREAS, in or about January and February 2020, the Government seized the following property pursuant to a seizure and/or search warrant:

(a)   All monies and funds contained in Coinbase account 59D73BA299672503D3A27FA9, held in the name of "Michael Ackerman," seized pursuant to seizure warrant 20 Mag. 555, signed by the Honorable Katharine H. Parker, United States Magistrate Judge for the Southern District of New York, on January 15, 2020 (the Coinbase Account");

(b)   All monies and funds contained in BitFinex account CRYPTO7Q (ID: 879959), with the registered email address of crypto7q@gmail.com, seized pursuant to seizure warrant 20 Mag. 869, signed by the Honorable Gabriel W. Gorenstein, United States Magistrate Judge for the Southern District of New York, on January 24, 2020 (the "BitFinex Account");

(c)   All monies and funds contained in Signature Bank Suspense Account 276000004, held for the benefit of Q3 I, LP, ("Q3 I") representing monies and funds formerly on deposit in a Signature Bank Account in the name of Q3 I, LP, seized pursuant to seizure warrant 20 Mag. 995, signed by the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, on or about January 28, 2020 (the "Q3 I Account");

(d)   All monies and funds contained in Signature Bank Suspense Account 276000004, held for the benefit of Q3 Holdings, LLC, ("Q3 Holdings") representing monies and funds formerly on deposit in a Signature Bank Account in the name of Q3 Holdings, LLC, seized pursuant to seizure warrant 20 Mag. 995, signed by the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, on or about January 28, 2020 (the "Q3 Holdings Account");

(e)   $90,000.00 in United States currency, seized on February 11, 2020 in connection with the search of 3875 East Lake Road, Sheffield Lake, Ohio pursuant to search warrant 1:20 MG 9013, signed by the United States Magistrate Judge William H. Baughman for the Northern District of Ohio (the "Seized Currency");

(f)   2018 Ruby Red Ford Edge Titanium AWD bearing VIN Number 2FMPK4K96JBB78780, seized on February 11, 2020 in connection with the search of 3875 East Lake Road, Sheffield Lake, Ohio pursuant to search warrant 1:20 MG 9013, signed by the United States Magistrate Judge William H. Baughman for the Northern District of Ohio (the "Seized Vehicle"); and

(g)   Tiffany & Co 1.87ct Diamond Ring with Platinum Bow Style Band, seized on February 11, 2020 in connection with the search of 3875 East Lake Road, Sheffield Lake, Ohio pursuant to search warrant 1:20 MG 9013, signed by the United States Magistrate Judge William H. Baughman for the Northern District of Ohio (the "Seized Jewelry");

((a) through (g) the "Seized Property");

WHEREAS, the following property was obtained by the Government from two individuals ("Individual-1" and "Individual-2"), which represent proceeds traceable to the commission of the offense charged in Count One of the Indictment:

(h)   BB&T Check No. 1002670349 in the amount of $306,000.00 in United States currency, obtained on or about February 20, 2020, representing a refund of an investment that Individual-1 made in a third-party company;

(i)   BB&T Check No. 1002639864 in the amount of $19,850.00 in United States currency, obtained on or about February 6, 2020, representing the proceeds of the sale of two watches purchased by Individual-1;

(j)   BB&T Check No. 1002594586 in the amount of $12,948.34 in United States currency, obtained on or about January 20, 2020, representing funds previously possessed by Individual-1;

(k)   BB&T Check No. 1002945416 in the amount of $6,215.46 in United States Currency, obtained on or about July 6, 2020, representing the proceeds of an insurance payment on a Bentley purchased by Individual-1;

(l)   Bank of America Check No. 1666407300 in the amount of $2,088,924.87 in United States Currency, obtained on or about on or about April 16, 2020, representing funds formerly on deposit in a Bank of America account in the name of Individual-2;

(m)   Bank of America check No. 1666408385 in the amount of $185,000, obtained on or about September 2, 2020, representing proceeds from the sale of gold bars and an Audi lease purchased by Individual-2;

 (n) BB&T Check No. 1002945398 in the amount of $273,269.23 in United States Currency, obtained on or about July 6, 2020, representing net proceeds from the sale of 1992 Carolina Circle NE, St. Petersburg, FL 33703;

 (o) Valley National Bank Check No. 73910 in the amount of $3,456,947.09 in United States Currency, obtained on or about April 5, 2021, representing net proceeds from the sale of the Florida Property;

((h) through (o), the "Subject Funds");

WHEREAS, on or about July 29, 2021, the Defendant pled guilty to Count One of the Indictment, pursuant to a plea agreement with the Government, wherein the Defendant admitted the forfeiture allegation with respect to Count One of the Indictment and agreed to forfeit, to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c): (i) a sum of money equal to $36,268,515 in United States currency, representing proceeds traceable to the commission of the offense charged in Count One of the Indictment; and (ii) all right, title and interest of the Defendant in: the Seized Property, the Subject Funds, and the following specific property:

 (p) The Montana Property;

 (q) The Rocky River Property;

 (r) The Sheffield Property;

 (s) The Valley City Property;

 (t) a 2018 GMC Terrain, VIN 3GKALMEV3JL386185;

 (u) a 2019 GMC Acadia, VIN 1GKKNULSXKZ255126;

 (v) a 2019 GMC Sierra Limited 1500, VIN 2GTV2LEC9K1101291;

 (w) a 2020 GMC Terrain, VIN 3GKALTEVXLL159766;

(x)   Tiffany & Co. 2.45ct Platinum Square Cushion Diamond Ring, purchased for $67,500 in United States Currency on April 23, 2018;

(y)   Tiffany & Co. Tiffany Platinum Soleste Diamond V HC Ring, purchased for $2,430 in United States Currency on April 23, 2018;

(z)   Tiffany & Co. Tiffany Platinum Soleste Diamond V HC Ring, purchased for $2,430 in United States Currency on April 23, 2018;

(aa)   Tiffany & Co. Return to Tiffany Love Round Sunglasses, purchased for $334.80 in United States Currency on April 23, 2018;

(bb)   Tiffany & Co. Return to Tiffany Love Lock Necklace, purchased for $718.20 in United States Currency on May 9, 2018;

(cc)   Tiffany & Co. Return to Tiffany Love Lock Bracelet, purchased for $556.20 in United States Currency on May 9, 2018;

(dd)   Tiffany & Co. Tiffany Keys Modern Keys Round Key Pendant, purchased for $1,566.00 in United States Currency on July 30, 2018;

(ee)   Tiffany & Co. Tiffany Hardware Wrap Necklace, purchased for $2,106.00 in United States Currency on July 30, 2018;

(ff)   Tiffany & Co. Tiffany x GLOBE-TROTTER 20" Trolley, purchased for $2,268.00 in United States Currency on July 30, 2018;

(gg)   Tiffany & Co. Tiffany x GLOBE-TROTTER 18" Trolley, purchased for $1,944.00 in United States Currency on April 28, 2018;

(hh)   Tiffany & Co. Tiffany x GLOBE-TROTTER 30" Trolley, purchased for $2,916.00 in United States Currency on April 28, 2018;

(ii)   Tiffany & Co. Tiffany x GLOBE-TROTTER 26" Trolley, purchased for $2,808.00 in United States Currency on April 28, 2018;

(jj)   Tiffany & Co. Tiffany CT60 3-Hand 34 MM Watch, purchased for $9,936.00 in United States Currency on August 3, 2018;

(kk)   Tiffany & Co. Tiffany x GLOBE-TROTTER 13" Vanity Case, purchased for $1,296.00 in United States Currency on August 28, 2018;

(ll)    Tiffany & Co. Diamond Point Cat Eye Sunglasses, purchased for $389.40 in United States Currency on August 28, 2018;

(mm)    Tiffany & Co. Luggage Tags (x4), purchased for $756.00 in United States Currency on September 12, 2018;

(nn)    Tiffany & Co. Tiffany x GLOBE-TROTTER 9" Jewelry Case, purchased for $1620.00 in United States Currency on December 23, 2018;

(oo)    Tiffany & Co. 1.69ct Platinum Ribbon Bow Diamond Ring, purchased for $46,872.00 in United States Currency on December 23, 2018; and

(pp)    Tiffany & Co. 2.58ct Tiffany Soleste Cushion-Cut Double Halo Engagement Ring with a Diamond Platinum Band, purchased for $73,440.00 in United States Currency on May 13, 2019;

((p) through (pp), collectively, with the Seized Property and the Subject Funds, the "Specific Property");

WHEREAS, the Defendant consents to the entry of a money judgment in the amount of $36,268,515 in United States currency, representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained;

WHEREAS, the Defendant further consents to the forfeiture of all his right, title and interest in Specific Property, which constitute proceeds traceable to the offense charged in Count One of the Indictment;

WHEREAS, the Defendant admits that, as a result of acts and/or omissions of the Defendant, the proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained cannot be located upon the exercise of due diligence, with the exception of the Specific Property; and

WHEREAS, pursuant to Title 21, United States Code, Section 853(g), and Rules 32.2(b)(3), and 32.2(b)(6) of the Federal Rules of Criminal Procedure, the Government is now

entitled, pending any assertion of third-party claims, to reduce the Specific Property to its possession and to notify any and all persons who reasonably appear to be a potential claimant of their interest herein.

IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, by its attorney Audrey Strauss, United States Attorney, Assistant United States Attorneys, JESSICA GREENWOOD and SHEB SWETT of counsel, and the Defendant, and his counsel, JONATHAN MARVINNY, Esq., that:

1.   As a result of the offense charged in Count One of the Indictment, to which the Defendant pled guilty, a money judgment in the amount of $36,268,515 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained, shall be entered against the Defendant.

2.   As a result of the offense charged in Count One of the Indictment, to which the Defendant pled guilty, all of the Defendant's right, title and interest in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853.

3.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment is final as to the Defendant, MICHAEL ACKERMAN, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

4.   All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn:

Money Laundering and Transnational Criminal Enterprises Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the Defendant's name and case number.

5.      The United States Marshals Service is authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

6.      Upon entry of this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, the United States (or its designee) is hereby authorized to take possession of the Specific Property and to hold such property in its secure custody and control.

7.      Pursuant to Title 21, United States Code, Section 853(n)(1), Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, and Rules G(4)(a)(iv)(C) and G(5)(a)(ii) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, the United States is permitted to publish forfeiture notices on the government internet site, www.forfeiture.gov.  This site incorporates the forfeiture notices that have been traditionally published in newspapers. The United States forthwith shall publish the internet ad for at least thirty (30) consecutive days. Any person, other than the Defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of the Notice on this official government internet web site, or no later than thirty-five (35) days from the mailing of actual notice, whichever is earlier.

8.      The published notice of forfeiture shall state that the petition (i) shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the nature and extent of the petitioner's right, title or interest in the Specific Property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property, any additional

facts supporting the petitioner's claim, and the relief sought, pursuant to Title 21, United States Code, Section 853(n).

         9.     Pursuant to 32.2 (b)(6)(A) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

         10.     Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n), in which all interests will be addressed.  All Specific Property forfeited to the United States under a Final Order of Forfeiture shall be applied towards the satisfaction of the Money Judgment.

         11.     Pursuant to Title 21, United States Code, Section 853(p), the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment.

         12.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas.

         13.     The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

14.    The signature page of this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

AGREED AND CONSENTED TO:

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By:    ___/s/ Jessica Greenwood_____              7/22/2021
       JESSICA GREENWOOD/ SHEB SWETT                DATE
       Assistant United States Attorney
       One St. Andrew's Plaza
       New York, NY 10007
       (212)637-1090 /6522

MICHAEL ACKERMAN

By:    /s/ Michael Ackerman_____              7/22/21
       MICHAEL ACKERMAN                             DATE

By:    *Jonathan Marvinny*_____              7/22/21
       JONATHAN MARVINNY, ESQ.                      DATE
       Attorney for Defendant
       Federal Defenders of New York
       52 Duane Street, 10th Floor
       New York, NY 10007

SO ORDERED:

       /s/ Laura Taylor Swain_____              9/8/2021
       HONORABLE LAURA TAYLOR SWAIN               DATE
       UNITED STATES DISTRICT JUDGE

Exhibit "B"

Exhibit "B"

①



**Life Insurance Company**

POLICY <u>4046238327</u> → *See 4th page. The policy # is different.*
- POLICY SUMMARY

| | | |
|---|---|---|
| OWNER'S NAME | Michael W. Ackerman | → *Also see page ##* |
| COVERAGE TYPE | <u>Guaranteed Issue Whole Life Insurance</u> ← | |
| COVERAGE AMOUNT | $600,000 | |
| EFFECTIVE DATE | 7/29/2019 | |
| (BENRFICIARY) | | |
| | Michele Roiland Ackerman 50%, 50% <u>in trust</u> for Meagan Ackerman, Marissa Ackerman and Michael R. Ackerman | |
| (RIDERS) *See page 3* | None | |
| BILLING METHOD | Credit Card Billing | |
| BILLING FREQUENCY | Monthly | |
| PAYMENT DUE ON 9/29/2021 | $389.00 | |
| AUTOMATIC PAYMENT ON 9/29/2021 | $389.00 | |
| TOTAL AMOUNT DUE* | $389.00 | |

*misspelled* (BENRFICIARY)

*I called and spoke to rep. The maximum amt. they write guaranteed policies is $25 k. No one writes policies for guaranteed whole life for $600K.*

*What trust? If one exists, it should be named in the contract.*

*This premium is very low for even a regular whole life policy for $600k.*

*Includes your current payment due, any past due amounts, and credits to your account.

<u>Make a Payment</u>  <u>Manage Automatic Bill Payment</u>  <u>Policy Summary</u>  <u>Update Billing Frequency</u>

<u>Payment History</u>

<u>AAA Life Insurance Company</u>
- <u>About Us</u>
- <u>Careers</u>
- <u>Privacy Policy</u>
- <u>Terms & Conditions</u>
- <u>Site Map</u>

Life insurance underwritten and annuities offered by AAA Life Insurance Company, Livonia, Michigan. AAA Life Insurance Company is licensed in all states except NY. CA Certificate of Authority #07061. Products and their features may not be available in all states. © 2021 All Rights Reserved.

EXHIBIT 3



AAA Insurance Company

*Diff? logo?* (handwritten)

17900 N. Laurel Park Dr.
Livonia, MI 48152
(800) 624-1662

## NOTICE REGARDING REPLACEMENT
## REPLACING YOUR LIFE INSURANCE POLICY OR ANNUITY?

Are you thinking about buying a new life insurance policy or annuity and discontinuing or changing an existing one? If you are, your decision could be a good one—or a mistake. You will not know for sure unless you make a careful comparison of your existing benefits and the proposed policy or contract's benefits.

Make sure you understand the facts. You should ask the company or agent that sold you your existing policy or contract to give you information about it.

Hear both sides before you decide. This way you can be sure you are making a decision that is in your best interest.

ALDM-23017-015-XX



# POLICY SCHEDULE PAGE

INSURED: MICHAEL ACKERMAN

ISSUE AGE: 51

POLICY EFFECTIVE DATE: 7/29/2019

GENDER: Male

POLICY NUMBER: 4046238327

INITIAL PREMIUM: $389.00*

OWNER: MICHAEL ACKERMAN

PAYABLE: Monthly

Ohio Department of Insurance Telephone Number: 800-686-1526

## DEATH BENEFIT

Benefits for Death Occurring During

First Policy
Year 2019
And Thereafter
(Face Amount):          $600,000

If death occurs as the result of an accident at any time while this Policy is in force, the face amount shall be payable.

### ADDITIONAL RIDERS/ENDORSEMENTS     *1st pag said None* (handwritten)

| Benefit Type | Benefit Amount | Annual Premium | Effective Date | Expiration Date |
|---|---|---|---|---|
| Travel Accident Endorsement | $600,000 | N/A | | |

Base Annual Premium:          $4,668.00

Total Annual Premium          $4,668.00*

\* $1060 Annual Fee Waived
An administrative fee of *$3.00/month* will be added for Direct Monthly Billing

Address and phone number for Premium payment, inquiries and notification of claim:
AAA Life Insurance Company
17900 N. Laurel Park Drive
Livonia, MI 48152
1-800-621-1667

Print Date: 03/29/2021

ICC16-6301

*He printed this in March. Why? This would not be an original policy contract?* (handwritten)

(4)

*Last digit does not match.*

## POLICY SCHEDULE PAGE

### (Continued)

POLICY NUMBER: 4046238329         INSURED NAME: MICHAEL ACKERMAN

### TABLE OF POLICY VALUES

| CALENDAR | END OF POLICY | CASH OR LOAN | AMOUNT OF REDUCED PAID-UP | LENGTH OF EXTENDED TERM INSURANCE N/A |
|---|---|---|---|---|
| 2019 | N/A | Variable Whole Life | 4,668 Annual | |

*1st page states guaranteed whole life policy. This says variable. This is a different type of policy.*

Mortality Table: 2001 Commissioners Standard Ordinary Composite ALB Ultimate Table with Gender Distinction

The above values are reduced by the amount of any Debt. Upon Your request, We will supply values for any years not shown. When You have paid Premium for part of a Policy Year, We calculate the values to fit the amount paid.

## AAA LIFE INSURANCE COMPANY
17900 N. Laurel Park Drive, Livonia, MI 48152
Phone: 1-800-624-1662

*[handwritten: This is not the Guaranteed Issue whole life like on 1st page ?]*

### STATEMENT OF POLICY COST AND BENEFIT INFORMATION
Prepared on: March 29, 2021

Insured: MICHAEL ACKERMAN
$4,668.00

| Benefit Description | Benefit Amount | Expiry Date | Annual Premium |
|---|---|---|---|
| Graded Benefit Whole Life Insurance | $600,000 | | $4,668.00 |
| Travel Accident Endorsement | $600,000 | | None |

*[handwritten: Columns don't line up]*
*[handwritten: What is this ?]*

| | | | |
|---|---|---|---|
| Policy Number: | 4046238327 | Issue Age: | 51 |
| Issue Date: | 07/29/2019 | Sex: | male |
| Premium Frequency: | Monthly | Modal Premium: | $389.0 |
| Policy Loan Interest Rate: | 6.00 per year in arrears | | |

*[handwritten: where is other zero ?]*
*[handwritten: columns not lined up]*

| Policy Year | Annual Premium | Accumulated Cash Values | Insured Death Benefit |
|---|---|---|---|
| 1 | $4,668.00 | $0 | $600,000 |
| 2 | $4,668.00 | $3200 | $600,000 |
| 3 | $4,668.00 | $6400 | $600,000 |
| 4 | $4,668.00 | $10,000 | $600,000 |
| 5 | $4,668.00 | $11,900 | $600,000 |
| 10 | $4,668.00 | $14,525 | $600,000 |
| 20 | $4,668.00 | $18,425 | $600,000 |
| Age 65 | $4,668.00 | $25,375 | $600,000 |
| Age 100 | $4,668.00 | $48,475 | $600,000 |

*[handwritten: every year it increases but not from 4 → 5 ?]*

### LIFE INSURANCE COST INDICES PER $1,000 OF DEATH BENEFIT

| | 10 YEAR | 20 YEAR |
|---|---|---|
| Surrender Cost Index | 19044.00 | 29385.00 |
| Net Payment Index | 17855.71 | 39990.00 |

*[handwritten: no commas in #'s]*

The cost indices and the projected values shown above reflect the deduction of charges for all additional benefits or riders issued with the policy as shown in this statement. An explanation of the intended use of these indices is provided in the Life Insurance Buyer's Guide. These indices are useful only for the comparison of the relative costs of two or more similar policies.

For further information, write the Company at the mailing address listed on top of this page.

Exhibit "C"

Exhibit "C"

PolicyConfirmation.html

Michael Ackerman
3875 E LAKE RD
SHEFFIELD LAKE OH 44054

Confirmation of Insurance

INSURED                    ***There is an Active Accelerate Death Benefit
Name of Insured               Lien outstanding. As of 9/1/21 the Lien
Michael Ackerman              Total is $60,356.26.************
Policy Owner
Michael Ackerman
Primary Beneficiary
Michele Roiland,ttee Fbo Children/terms Of Tst Agr, Michele Roiland
Assignee
None


INSURANCE
Face Amount          PolicyDate        Plan
$600,000.00          05/10/2018        Term Life
Billing Frequency    Premium           Paid To Date
Monthly              $282.64           09/10/2021
Waiver of Premium Rider  Other Riders
No                   No


VALUES QUOTE AS OF: 09/01/2021
Cash Value           Cash Value of PUA     Dividends Accumulated
$0.00                Not Applicable        Not Applicable
Loan Balance         Unused Premium        Surrender Value
$0.00                $84.79                $84.79
Loan Interest Rate
Not Applicable


The information contained in this policy confirmation is believed by the
company to be accurate but is not guaranteed and does not modify, amend or
supplement our policy contract.